381 So.2d 1052 (1980)
Laura S. McRAE
v.
John M. McRAE, Jr.
No. 51731.
Supreme Court of Mississippi.
April 2, 1980.
*1053 Gray, Montague & Pittman, Frank D. Montague, Jr., Hattiesburg, for appellant.
Pack, Ratcliff & Ratcliff, Kalford C. Ratcliff, Laurel, for appellee.
Before PATTERSON, C.J., and BROOM and COFER, JJ.
COFER, Justice, for the Court:
The cause has been brought here from the Chancery Court of the Second District of Jones County. Appellant is Mrs. Laura S. McRae, and appellee is John M. McRae, Jr. The main issue here is the effect, if any, adultery of the former wife after divorce, has upon her right to continued alimony from her former husband.
The parties were married in 1956. Three children, a son and two daughters, were born to them in 1957, 1960, and 1964. The children were respectively 21, 17 and 14 years of age at the modification hearing, from which this appeal is taken. She was awarded divorce on the 13th day of June 1975.
Alimony, child support and other property matters were resolved by agreement of the parties and were by the court found to be reasonable, and were incorporated in the divorce decree. Among other things, agreed upon by the parties and incorporated in the decree were (1) a lump sum of $11,500 which appellee was to pay to appellant "out of which [appellant] shall pay past due bills incurred by her in the approximate sum of $3,000; the expenses of moving herself, the children of the parties and her household belongings to Massachusetts, and her solicitor's fees," and (2) appellee was to pay $1,525 per month as alimony, and (3) $250 per month for each of the three children, custody of all whom was awarded to appellant.
As was anticipated in the decree, appellant took herself and the two daughters to Massachusetts. There, appellant experienced difficulty in finding a place to live, and, in three years had undertaken a living in more than a half-dozen abodes. She was acquainted with a man from childhood, who had become a resident of New Jersey, with whom she came in contact through his living in the summers next door to where she was sojourning in Massachusetts. This acquaintance was separated from his wife, but their divorce suit then pending was experiencing some delay before trial. He was a partner in some real estate in New Jersey, a residence of sorts which would be available but which required repairs to make it suitable for living purposes for her and the children. Appellant moved herself and the children into this living arrangement and the childhood friend did likewise, and the four of them set about doing the things to the residence which made it to their liking.
There appellant lived and cohabited with the man from September 6, 1977, to October 1, 1978, and her two daughters lived in the place of residence with them. She admitted that she had sexual relations, not habitual, with the man during their cohabitation, and said there had been none since the cohabitation ended. He paid the rent a part of the time and she paid all of the other expenses of living. The situation of their cohabitation became socially and emotionally difficult for her and they discussed his moving out on many occasions, but he did not move until appellee filed a petition for modification.
Appellee filed petition to modify the earlier decree about October 1, 1978, alleging that he had kept his alimony payments current, and prayed termination of the requirement alleging as a basis therefor that on information and belief appellant had entered in a meretricious relationship, and, for many months, had been cohabiting with another man, in adultery amounting to a fraud on him. He claimed it amounted to a change of circumstances warranting relief *1054 from payment of alimony. Appellant admitted that she formerly cohabited with the man, but denied that it was meretricious. She alleged instead, that it was made necessary by appellee's refusal to perform his support obligations to her and the children of the parties. In a cross petition she sought increase in support and for the "immediate listing and sale of the Gulf Shores, Alabama, property of the parties and the equal division of the equity resulting therefrom." (To receive treatment hereinafter). She alleged numerous failures of appellee to meet the requirements of the original decree, including defaults in the alimony payments. He amended his original petition for modification to allege as a change in the circumstances, that his financial condition had become worse so that compliance therewith had become oppressive and unmanageable and would result in his insolvency.
Appellee testified that he ceased alimony payments when appellant moved to New Jersey because he supposed she was remarried, and it took her six months to let him know that such was not the case. During her living in the home with the man, appellee had seen the man when appellee had visited in New Jersey, and he had also talked with him by telephone and found it easier to transact business with him than with appellant.
The record reflects delays on appellee's part in paying alimony, even before appellant's relations with a man. In fact, it may correctly be said that appellee met the demands of the support decree in a very casual manner. Several solicitors were retained at various times in efforts to bring his payments to a current basis. Appellant blames his lack of attention to his court-ordered support on her assuming the unconventional relationship with the man. He was in fact in default during the hearing on the modification petition, but, on the eve of the decision, he brought himself to a current basis.
The court found that, through her own confessed cohabitation with the man for the period established, appellant forfeited her right to future alimony as would have happened had she been married to the man, and that there had been a material change in the circumstances upon which it discontinued all future alimony.
Appellant here assigns errors as follows:
I. Certain findings of fact of the lower court are clearly erroneous and against the great preponderance of the evidence.
II. The conclusion of law that the appellant forfeited her right to future alimony is erroneous.
III. The direction to dispose of certain property in accordance with former decree is erroneous.
We fail to find merit in the first assignment of error.
Noticing the second assignment, that the court erred in the conclusion that appellant had forfeited her right to future alimony, we preface our remarks and decision by observing that appellee has not shown an inability to provide alimony for appellant the record supporting the belief that he was more able at this hearing than he was at the entry of the original decree; appellee knew of the relationship for months before he took court action, during which time the relationship continued; before his petition to modify, appellee visited and had face-to-face contact with the man, and found he could conduct business with him more easily than directly with appellant, and his petition to modify does not include a prayer for some action removing his children from the environment nor any reference to the poor quality of the example their mother was setting for them. (We are mindful of their ages.)
The only case we have in the jurisprudence of this state bearing directly upon the issue now being considered is Rubisoff v. Rubisoff, 242 Miss. 225, 232, 133 So.2d 534, 536 (1961). In that case there was a divorce to the husband, the appellee, and an adopted child's custody was awarded to appellant, and $250 was fixed for the alimony of the appellant and support for the child. Appellee, by deceit according to the appellant, obtained the child from a nursery in New *1055 Orleans where appellant and the child lived and brought him to Shelby, Mississippi. Leading up to a consideration of the issues, the opinion says of the appellant, "after the divorce, Mrs. Rubisoff went to New Orleans, Louisiana, to live and to work as a nurse, but she fell upon `evil days' and was arrested for giving a bad check ..." The opinion does not directly reflect the exact meaning of "evil days", but does deal with her "misconduct," and the decision is based thereon. In it the chancery court's discontinuance of future alimony was affirmed.
Of several issues involved in that decision only one needs treatment here  "can the chancery court divest a wife of future alimony payments on the ground of misconduct of the wife after the divorce? Bunkley and Morse, Amis on Divorce and Separation in Mississippi, § 6.12 (1957), is quoted. That authority deals with the contrary views and (1) neither divorced person may complain of the other divorced person's conduct, that the divorced person has a duty to society, but not to his or her divorced spouse, and (2) "the court has a continuing jurisdiction over the matter of the subsequent support of the wife by the husband and it would be shocking to the conscience to compel the husband to continue to support the wife by payment of alimony while she is living in adultery with another man." (242 Miss. at 236, 237, 133 So.2d at 538).
The Rubisoff opinion then continues:
On the other hand, where the wife's misconduct after the divorce may have been the result of want and penury brought about by refusal of the husband to pay alimony, the court will not relieve the husband from payment of alimony. (242 Miss. at 237, 133 So.2d at 538).
The trier of fact, by the opinion, has the duty to find whether or not the alleged misconduct of the former wife is of such nature as to forfeit her right to future alimony. Where, as here, the misconduct has terminated before trial, the trier of fact has the further responsibility to decide whether the termination is in good faith and with intention not to revert to the error.
No hard and fast rule or mold may be laid down to fit at once all of the spectrum of misconduct. The question must be faced and determined on a case-by-case basis.
Considering the present state of facts alone, while appellant was apparently accustomed to comfortable living conveniences, it is true, too, that she had resolved to return or to go to Massachusetts to live even as deliberations were progressing leading to settlement of their financial and property matters. She did not make sure that she would have living quarters, or that they were reasonable, in that state. In the divorce decree there was provision that appellee would buy appellant's equity in their home in Laurel, which he did. The record is silent as to whether there was a residential housing shortage in Laurel.
We are of the view that the cohabitation out of marriage, of appellant was not the result of or forced by want or penury on her part, and that she was not brought by want or penury to the place where she was, or felt that she was, compelled to sacrifice her body for the relief of her necessities. In addition thereto, while she strongly protests against the likelihood that there will be reversion on her part to the adulterous living, she testified that she could see no alternative to living in her abode in New Jersey, because she had high school children. "It is the best I can do in New Jersey. I am protected in that house with a lease and I feel as if I need to stay there."
We are of the further view that her abode with the man for more than a year, openly living in adultery, enduring the embarrassment of it, and, in addition by silence, setting that kind of example before her daughters constituted a material change in the circumstances of the parties and that, by her unconscionable conduct, she forfeited her right to future alimony by her repudiation of the right thereto.
The court said, in part, in its opinion:
It is the Court's opinion that by the admitted cohabitation over this period of *1056 time with a person to whom she was not married that the respondent forfeited her right to future alimony the same as if she had been married to him. To hold otherwise would be to condone the living and cohabiting with a person rather than marrying and, in effect would penalize a person for marrying but reward them for cohabitation without benefit of marriage.
We think that, on the present record, the court was manifestly right in its decision.
The final assignment of error directs itself to the Court's action in directing sale of Gulf Shores, Alabama, property in accordance with the decree of divorce.
By the parties' agreement, the decree entered June 13, 1975, recorded appellee's agreement to buy from appellant her share in the Laurel home of the parties on an agreed formula and the Gulf Shores property, beach lot, on a valuation of $25,000, or he might buy either of the properties, and the other of them should be "placed on the market for sale," the beach lot on the $25,000 basis. Appellee was given the right, within thirty days, not to buy either of the properties. (He did buy the Laurel property, as earlier herein noticed.) The decree further provided that appellee would pay the installments, taxes, and other amounts accruing on the property, but that amounts he might pay in reduction of the principal amount owed on the particular property were to be credited to appellee's share in the equity of the parties therein. The decree also provided that the parties might, by mutual consent, make other disposition of the property.
In appellant's cross petition to the petition to modify the divorce decree, she complained of the dilatory inaction of appellee in buying or listing the beach property for sale, and said, "It is in the best interest of the parties that said decree be modified to require the immediate listing and sale of said property for not less than $35,000 and the equal division of the equity resulting from such sale." She prayed as a part of her relief, "The immediate listing and sale of [the beach property] of the parties and the equal division of the equity resulting therefrom."
The Court's decree on the modification issues ordered as to the beach property, "... and the provisions of the said decree of June 13, 1975, relating to the sale of the real estate located at Gulf Shores, Alabama, and the division of the proceeds resulting therefrom all as provided in said decree, are hereby ordered to be carried out."
Appellant has contended that a minimum sale value of $35,000 be placed on the land, and that there be an equal division of the proceeds. It is a part of her complaint that appellee has built up his equity in the beach property by paying recurring installments on the purchase price. This, however, has been done with his own funds and does not operate a reduction in the value of her equity therein. The 1975 decree did not lodge in either of the parties the paramount duty to place the property on the market, and the conclusion might be drawn that neither of them has at all times used diligence in disposing thereof. The further conclusion may be drawn that because of the estranged relations they have placed themselves in a position of less than full cooperation with each other.
We fail to see error in the adjudication of the beach property issue.
It follows that the decree of the chancery court is affirmed as to all asserted errors.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.