IN THE SUPREME COURT OF MISSISSIPPI
NO. 94-CA-00870-SCT

*SUSAN ANDERSON*

*v.*

*JOHN ANDERSON, SR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/04/94 |
| TRIAL JUDGE: | HON. GERALD E. BRADDOCK |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM M. BOST, JR. |
| ATTORNEYS FOR APPELLEE: | SAMUEL DAVID HABEEB |
| | J. MACK VARNER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 4/10/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/1/97 |

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1. This case comes before this Court from a modification of Susan Long Anderson and John Anderson's divorce decree to eliminate the payment of alimony and to reduce the payment of child support. This case was tried by the chancellor on John Anderson's motion to modify and reduce child support and eliminate alimony. John asserted that his income had decreased to the point that he could not continue to pay $1000 per month as child support and that because of Susan's post-divorce misconduct, he should be relieved of paying alimony. Susan admitted that she resides with a man but claims there was no evidence to indicate that she either received support from him or that she contributed to his support other than letting him share her home. She contended that there was insufficient change in circumstances to justify elimination of alimony and that to terminate alimony solely because she lived with a man to whom she was not married did not, of itself, justify the termination of support.

¶2. The chancellor modified the divorce decree by reducing the child support to $800 per month and

eliminating the alimony payments. Aggrieved by the chancellor's decision, Susan appeals to this Court raising the following issues:

**I. THE LOWER COURT ERRED IN TERMINATING THE ALIMONY PAYMENTS BECAUSE THE CHANCELLOR APPLIED AN ERRONEOUS LEGAL STANDARD AND THE PROOF DID NOT SUPPORT THE HUSBAND'S CLAIM OF MATERIAL CHANGE IN CIRCUMSTANCES THAT WOULD JUSTIFY THE ELIMINATION OF ALIMONY.**

**II. THE LOWER COURT ERRED IN REDUCING CHILD SUPPORT PAYABLE BY $200 PER MONTH.**

**III. THE LOWER COURT ERRED IN NOT AWARDING THE FORMER WIFE ATTORNEY'S FEES.**

## STATEMENT OF FACTS

¶3. Susan Long Anderson and John Anderson were divorced by decree dated April 10, 1991. They have two children of their marriage, John, Jr. (age 20) and Kyle (age 15). John has physical custody of John, Jr., who attends Florida State University, and Susan has physical custody of Kyle. John pays for John, Jr.'s tuition, room, board, and expenses at Florida State University.

¶4. John was ordered to pay $100,000 as a property settlement in the original divorce decree in this action. Forty thousand dollars of the property settlement was to be paid at the time of the divorce, and the balance of the payments to be paid over the next ten years. He also was to pay $37,655 in lump sum alimony, in yearly installments of $3,765.50 per year. John also deeded the marital home to Susan at the time of the divorce decree, which is located in Tallahassee, Florida.

¶5. Susan, at the time of the modification trial, was not employed. She had not been employed since the divorce. John had agreed to pay $1000 per month as periodic alimony "until wife dies or remarries." John suspended the payment of alimony from October, 1993 through January, 1994 and paid $500 to Susan in February and March, 1994. Shortly before the trial for modification, John paid Susan $5000 to catch up the alimony arrearage.

¶6. Susan admitted in requests for admissions that John Seward moved into her home in Orange Park, Florida, on April 15, 1992. Seward has been living continuously with Susan since April of 1992. Susan and Seward have taken trips together. Susan and Seward have taken several trips to Tallahassee; Susan's home in Orange Park is about 175 miles from Tallahassee. She and Seward would go almost every week staying a few days during the week and on week-ends for a period of about six months.

¶7. At the time Seward moved in with Susan in April of 1992, he had been working a forty hour week for the railroad. He quit working shortly thereafter because of an injury and has not worked since. He only started receiving disability checks for the injury in the amount of $1500 one month prior to the trial for modification. However, he had received income of $600 per month for sick leave benefits since April of 1992.

¶8. Susan claims that Seward does not contribute to her support in any way, and she does not

contribute to his support in any way. Susan paid the house note and utility bills for the home in which she and Seward were living. She paid all of the expenses, and Seward did not pay her any rent. Seward would buy his groceries from time to time. He receives his mail at Susan's home. Seward and Susan exchange Christmas and birthday presents. Susan and Seward share the same bedroom and have sexual relations and have done so since they began living together in April of 1992.

¶9. Although Seward did not contribute to Susan's support, he provided labor to make improvements to the house in Tallahassee. However, he is "occupationally disabled," not permanently disabled. Seward was formally a conductor for a railroad, and Susan claimed that he is occupationally disabled such that he cannot connect trains.

¶10. Susan owns Florida tax certificates valued at $20,000, on which she paid is 18 percent. Depending on how she is paid, that could be as high as $300 per month. Susan stated that based on how she was paid in the past two years she would receive closer to $150 per month. Susan had rented the house in Tallahassee at one time for between $375 and $440.

¶11. The persons living in Susan's home, at the time of the trial, included Seward, Kyle (younger son of John and Susan), and Susan's twenty-four year old daughter from a previous marriage who works for a temporary agency and is not regularly employed. No one in the household contributes to its financial maintenance. Since March of 1994, Seward had done no carpentry work for Susan. Susan pays the house note, utilities, and all other expenses listed on her financial statement.

¶12. John Anderson lost his job at Cooper Lighting shortly after the divorce, and he had to accept employment with Continental Electric in Birmingham, Alabama, with a reduction in income of $15,000 per year. In October of 1993, because of financial problems at Continental Electric, John was told that he would have to take another reduction in salary down to $4000 a month. In February of 1994, his salary was increased by $500 per month. There is no anticipation of an increase in income back to the level of salary he was making at the time of the original divorce.

¶13. John showed an approximate monthly gross income of $7,589 with total adjustments to his gross income as $4,291. This leaves a net of $3, 297 per month. John has a total of $4,799 per month of expenses. The difference in the amount of money that John was making for Cooper in 1991 and what he is making with Continental Electric is a $29,000 per year change.

¶14. He also had a loan to what was then First National Bank of Vicksburg for approximately $300,000 to purchase tax certificates. The tax certificates were bought both in John's name and the First National Bank of Vicksburg. When the check would arrive, John would endorse it and send it to the bank. At the time of the trial for modification, there was $115,000 outstanding on the loan.

¶15. Susan has no other source of income other than what she receives from John each month. Susan put some of the $40,000 she received from John at the time of the divorce into tax certificates and some into the restoration of the rental house in Tallahassee. Susan went to a hairdresser school and went to a barber stylist school, and applied for jobs as a barber-stylist. She claims that she suffers from a form of rheumatoid arthritis and has been unable to obtain employment because of this. However, she was not under any kind of medical disability or receiving disability payments at the time of the trial.

¶16. Finding a material change in circumstances since the final divorce proceeding, the chancellor allowed the reduction of child support from $1000 per month to $800 per month. He also terminated the payment of periodic alimony of $1000 per month. Aggrieved of the chancellor's finding, Susan has perfected her appeal to this Court.

## DISCUSSION OF THE ISSUES

### I. THE LOWER COURT ERRED IN TERMINATING THE ALIMONY PAYMENTS BECAUSE THE CHANCELLOR APPLIED AN ERRONEOUS LEGAL STANDARD AND THE PROOF DID NOT SUPPORT THE HUSBAND'S CLAIM OF MATERIAL CHANGE IN CIRCUMSTANCES THAT WOULD JUSTIFY THE ELIMINATION OF ALIMONY.

¶17. This case came before the chancellor prior to this Court's decisions in *Hammonds v. Hammonds*, 641 So. 2d 1211 (Miss. 1994), and *Ellis v. Ellis*, 651 So. 2d 1068 (Miss. 1995). Therefore, the chancellor looked to this Court's earlier decisions for guidance. The chancellor terminated alimony based on Susan Anderson's cohabiting with a third party. The decision reached by the chancellor followed the past decisions by this Court in *Owen v. Gerity*, 422 So. 2d 284, 287 (Miss. 1982); *McHann v. McHann*, 383 So. 2d 823 (Miss. 1980); *McRae v. McRae*, 381 So. 2d 1052 (Miss. 1980).

¶18. Susan Anderson complains to this Court that the chancellor applied an erroneous legal standard because the he did not apply the rule of law decided by this Court in *Hammonds*. This Court's decision in *Hammonds v. Hammonds*, 641 So. 2d 1211 (Miss. 1994), was rendered on Augu[1]st 18, 1994.[2] The chancellor followed the well established line of cases dealing with modification of alimony when he rendered his decision on August 4, 1994.

¶19. The standard of review in determining the weight of the evidence has been well established by this Court, and it will not "disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Ellis*, 651 So. 2d at 107; *Crow v. Crow*, 622 So. 2d 1226 (Miss. 1993); *Bell v. Parker*, 563 So. 2d 594, 596-97 (Miss. 1990).

¶20. In *Ales v. Ales*, 650 So. 2d 482 (Miss. 1995), this Court reiterated its stance on the retroactive application of new rules of law. "It is a general rule that judicially enunciated rules of law are applied retroactively." *Id.* at 484; *quoting Hall v. Hilbun*, 466 So. 2d 856, 875 (Miss. 1985). *Ales* involved the retroactive application of partial abrogation of parent-unemancipated child immunity acknowledged in *Glaskox v. Glaskox*, 614 So. 2d 906 (Miss. 1992). *Glaskox* was decided by this Court almost one year after the appellant in *Ales* filed her appeal. This Court held that because the *Ales* case was pending review at the time of the *Glaskox* decision, the *Glaskox* decision would be applied retroactively. *Ales*, 650 So. 2d at 486. Likewise, the correct legal standard in which this case will be reviewed on appeal will be the standard adopted by this Court in *Hammonds* and *Ellis*.

¶21. "Alimony awards by the court or by an agreement incorporated into the decree of the court, if not lump sum, have long been subject to modification upon proof of material change in circumstances subsequent to entry of the decree because of public policy." *Taylor v. Taylor*, 392 So. 2d 1145, 1147 (Miss. 1981). In order to change or modify the divorce decree there must be a material change of

circumstances of the parties arising after the original decree was rendered. *Morris v. Morris*, 541 So. 2d 1040, 1043 (Miss. 1989). Reiterating its holding in *Trunzler v. Trunzler*, 431 So. 2d 1115 (Miss. 1983), this Court stated a petition should deal only with changes of circumstances not anticipated at the time of the entry of the original decree. *Morris*, 541 So. 2d at 1043.

¶22. There are several factors which a chancellor may take into consideration when determining the proper amount of alimony. *Ethridge v. Ethridge*, 648 So. 2d 1143, 1146 (Miss. 1995). Those factors have become known as the *Armstrong* factors and include:

1. Income and expenses of the parties;

2. Health and earning capacity of the parties;

3. Needs of each party;

4. Obligations and assets of each party;

5. Length of the marriage;

6. Presence or absence of minor children in the home;

7. Age of the parties;

8. Standard of living of the parties both during the marriage and at the time of the support determination;

9. Tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party;

12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Anderson v. Anderson*, 618 So. 2d 1278, 1280 (Miss. 1993).

¶23. John's situation has changed unexpectedly since the entering of the final divorce decree. He has changed jobs involuntarily and has suffered a decrease in his salary. Further, he has taken another reduction in salary after starting his new job. Susan began living with another man outside the union of marriage after the divorce decree became final. This Court finds it to be very doubtful such a living arrangement was contemplated at the time the divorce decree was entered.

¶24. The subsequent misconduct of a wife following an absolute divorce from her husband may, in proper circumstance, constitute a material change in circumstances so as to entitle the husband to modification of the final decree for divorce. *Owen v. Gerity*, 422 So. 2d 284, 287 (Miss. 1982); *McHann v. McHann*, 383 So. 2d 823 (Miss. 1980); *McRae v. McRae*, 381 So. 2d 1052 (Miss. 1980); *Rubisoff v. Rubisoff*, 133 So. 2d 534 (Miss. 1961). Most often the misconduct is a sexual relationship of a wife whereby the husband seeks a termination of future alimony provided for by the final divorce decree. *Owen*, 422 So. 2d at 287. This case is no exception and presents this Court with

the proper circumstances under the legal standards of **Hammonds** and **Ellis** to require the termination of alimony.

¶25. Susan admitted to John Seward living in her home at Orange Park, Florida, continuously since April of 1992. They share a bedroom and have sexual intercourse together. He also receives his mail at the residence. Further, the two exchange Christmas and birthday gifts, and take overnight trips together. For all practical purposes, Susan Anderson and John Seward live as husband and wife without the actual and legal bonds of matrimony.

¶26. While it is true that an agreed decree as to alimony is subject to review because of a material change of circumstances, careful consideration is to be given to the intent of the parties at the time of the entering of the divorce decree. **McKee v. McKee**, 382 So. 2d 287, 288 (Miss. 1980). Susan argues to this Court that the agreement between the two parties provided for alimony to be paid by John Anderson unto Susan until she died or remarried. She contends that neither of these two termination events had taken place at the time of the modification hearing.

¶27. In **McRae**, this Court cited its earlier opinion in **Rubisoff** and stated:

> The trier of fact, by the opinion, has the duty to find whether or not the alleged misconduct of the former wife is of such nature as to forfeit her right to future alimony. Where, as here, the misconduct has terminated before trial, the trier of act has the further responsibility to decide whether the termination is in good faith and with intention not to revert to the error.

> No hard fast rule or mold may be laid down to fit at once all of the spectrum of misconduct. **The question must be faced and determined on a case-by-case basis.**

**McRae**, 381 So. 2d at 1055 (emphasis added).

¶28. The Court in **McHann** determined that the misconduct of the wife was sufficient to merit a forfeiture of her future support from her former husband based on the duration of and frequency of her admitted adultery. **McHann**, 383 So. 2d at 826. In finding the chancellor correct in **McHann**, this Court expressed its displeasure with cohabiting outside of marriage. The Court stated a different result would condone adultery and in effect would penalize a divorcee for marrying, but reward a wife for cohabiting without the benefit of marriage. **Id.**

¶29. At the time of the chancellor's decision, this Court had decided **Hammonds v. Hammonds**, 597 So. 2d 653 (Miss. 1992). Fault by the former spouse who was receiving alimony would not terminate alimony if it would leave the recipient destitute. **Id.** Evidence of Susan Anderson's assets and their incoming producing potential was presented to the chancellor. Further, the change in John Anderson's employment status and income earning was presented to the chancellor. The chancellor ruled that termination of alimony payments to Susan Anderson was justified.

¶30. While not making specific findings of fact in the record as to the **Armstrong** factors, the chancellor did consider the position of the parties at the time of the divorce decree in relation to their positions at the time of the trial for modification. This Court is charged with reviewing the entire record. **Culbreath v. Johnson**, 427 So. 2d 705, 707 (Miss. 1983); **Blakeney v. Blakeney**, 244 So. 2d 3 (Miss. 1971). Evidence that supports or reasonably tends to support the findings of fact below,

together with all reasonable inferences which may be drawn therefrom and which favor the lower court's finding of fact, must be accepted. *Blakeney*, 244 So. 2d at 4. As to issues of fact where no specific findings have been articulated by the chancellor, this Court proceeds upon the "assumption that the chancellor resolved all such fact issues in favor of the appellee." *Love v. Barnett*, 611 So. 2d 205, 207 (Miss. 1992); *Tedford v. Dempsey*, 437 So. 2d 410, 417 (Miss. 1983).

¶31. While the chancellor may not have made specific findings of fact in his opinion, he heard all the testimony and viewed all of the evidence. His findings on the record suggests that he considered all of the *Armstrong* factors and the entire circumstances of the parties before rendering his decision.

¶32. When reviewing the chancellor's decision under the parameters of this Court's previous holdings in *Hammonds v. Hammonds*, 641 So. 2d 1211 (Miss. 1994), and *Ellis v. Ellis*, 651 So. 2d 1068 (Miss. 1995), our decision is to affirm on this issue. In *Hammonds* this Court adopted Florida's approach to recipient spouses engaging in sexual intercourse and cohabiting outside the union of marriage. There was a two-prong test adopted that required the chancellor to consider whether the third party provides support to the recipient spouse, and whether the recipient spouse contributes to the support of the third party. *Hammonds*, 641 So. 2d at 1216. Other factors were suggested for chancellors to consider such as length of the marriage, respective contributions to the marriage, property received at divorce, the parties' respective earning capacities, as well as the earning capacities of the new spouses or cohabitants. *Id.*

¶33. The Court in *Ellis v. Ellis*, 651 So. 2d 1068 (Miss. 1995), reiterated its prior holding in *Hammonds* by stating the factors chancellors should consider were (1) whether the third party provides support to the recipient and (2) whether the recipient spouse contributes to the support of the third party. *Id.* at 1072. Susan Anderson admits that Seward receives the benefit of living rent free and receiving utility, phone, and cable free of charge. She contends that "support to the third party" means direct support, such as food or clothing.

¶34. This Court holds that "support to the third party" means support of any kind. Certainly, the third party is receiving all the benefits of marriage without the actual union and bonds of matrimony. By living rent free and not having to pay for his utilities, Seward is receiving support from Susan. It matters not that the support is not a direct cash payment. Seward receives free benefits from Susan which he would otherwise have to purchase or make payments were it not for her. Seward's living in Susan's house free of charge is sufficient to have met the factors set forth in *Hammonds* and *Ellis*.

¶35. There have not been any cases subsequent to *Ellis* decided by this Court that deal with modification of alimony where the recipient spouse is cohabiting with a third party and either receiving from or providing support to the third party. We take this opportunity to close, or at least tighten, the loophole allowing persons living outside a sacred matrimonial union to cohabit and enjoy all the benefits of a married relationship. Where an alimony recipient spouse deliberately and purposefully avoids marriage merely to continue receiving alimony, equity should not require the paying spouse to endure supporting such misconduct. The appellant's argument is without merit, and the chancellor's decision is affirmed.

## II. THE LOWER COURT ERRED IN REDUCING CHILD SUPPORT PAYABLE BY $200 PER MONTH.

¶36. "In appeals from Chancery Court, our scope of review is limited. We will not reverse a Chancellor's findings of fact where they are supported by substantial credible evidence in the record." *Hammett v. Woods*, 602 So. 2d 825, 827 (Miss. 1994). Discretion is shown towards a chancellor's decision regarding modification of child support. However, this Court will reverse when there is shown manifest error in findings of fact or an abuse of discretion. *Id.*

¶37. At the time of the divorce in 1991, John's yearly salary was $84, 577. He lost his job in June of 1992 and began work in September making around $72,000 a year. That amount was later reduced because of a slump in business to roughly $48,000, with an increase later to approximately $54,000. From investments John receives close to $11,000 per year. For 1994 John's gross income was approximately $65,000. Therefore, applying the Child Support Guidelines[2] for one child of 14 percent, John should have to pay $700 per month. The chancellor's reduction of $200 per month still required John to pay $800 per month. This Court has held that the Child Support Guidelines are nothing more than suggested guidelines and should not bind chancellors in awarding child support. *Thurman v. Thurman*, 559 So. 2d 1014, 1017 (Miss. 1990).

¶38. The chancellor in reducing the amount of child support from $1000 per month to $800 per month made the following determination in his written opinion:

> Due to Husband's substantial decrease in income since the prior Decree of this Court and the increased expenses for college education of the oldest child, there has been a material change of circumstances requiring some reduction of child support being paid by Husband for the youngest child of the parties. Therefore, the former Decree of this Court will be modified as to child support paid by Husband reducing said amount to the sum of $800 per month.

¶39. The father's ability to pay is but one factor to consider when modifying child support agreements because the paramount concern is the needs of the child. *Hammett*, 602 So. 2d at 828; *Cupit v. Cupit*, 559 So. 2d 1035 (Miss. 1990); *Thurman*, 559 So. 2d at 1018. The material change in circumstances that necessitate the modification of child support must not have been reasonably foreseeable at the time of the divorce. *Morris v. Morris*, 541 So. 2d 1040, 1042-43 (Miss. 1989).

¶40. The changing of jobs and subsequent reduction of John Anderson's income certainly could not have been anticipated or foreseen at the time of the divorce in 1991. His salary decreased almost $3000 per month overall. This was a material change in circumstances that would suffice to allow the reduction in child support.

¶41. Susan claims that the chancellor erroneously considered the increased expenses of John, Jr.'s college expenses as a material change in circumstances such that a modification of child support was justified. She argues that the parties anticipated John, Jr.'s attending college at the time of the divorce and had provided for the event in the separation agreement. The chancellor in his opinion stated that the reduction of John's income coupled with the increased college expenses of John, Jr. were material changes that required a reduction in child support.

¶42. It would have been manifest error for the chancellor to have considered only the increased college expenses of John, Jr. as a material change in circumstances requiring modification of child support. However, the chancellor considered the increased college expenses together with the reduction of John's income. When taking the facts together as a whole, this Court finds they were

sufficient to merit a material change in circumstances.

¶43. Also, the chancellor labeled the college expenses as "increased." This would indicate that the expenses were greater than anticipated at the time of the divorce. Alternatively, if the expenses were reasonably calculated and not unforeseen, we are of the opinion that any error committed by the chancellor was harmless. The reduction of John's income alone was sufficient to grant a modification in the amount of child support that was being paid.

¶44. The amount that was to be paid even after the reduction in income was still greater than what is required according to the statutory guidelines. John was still required to pay $800 per month. The guidelines would have only required $700 per month. The chancellor's finding of a material change of circumstances was not an abuse of discretion and is affirmed.

### III. THE LOWER COURT ERRED IN NOT AWARDING THE FORMER WIFE ATTORNEY'S FEES.

¶45. In the instant case the chancellor denied Susan's request for attorney's fees. He did not give a specific reason for denying the fees. The chancellor simply stated "[t]he Court does not feel attorney's fees should be awarded to either party, and therefore same will be denied." Susan contends that the chancellor's termination of alimony and modification of child support were erroneous, and she should receive attorney's fees. This argument is without merit as the chancellor's decision regarding the termination of alimony and modification of child support is affirmed.

¶46. Secondly, Susan contends that there was a clear showing at the trial of relative financial disparity and high probability of inability to pay attorney's fees. John responds by saying Susan has ample funds to pay her attorney's fees. John was behind some $5000 in payments to Susan before the trial. He made those payments just prior to trial in order to avoid being behind in what he owed Susan. That payment was sent directly to Susan's attorney. Susan received $6000 per year as part of the property settlement and $3,765.50 per year as an installment on lump sum alimony. The chancellor did not agree with Susan and failed to find her showing of inability to pay so clear. As stated above, the chancellor denied the payment of attorney's fees.

¶47. As with alimony, the determination of attorney's fees is largely in the discretion of the chancellor. *Smith v. Smith*, 614 So. 2d 394, 398 (Miss. 1993). This Court is "reluctant to disturb a chancellor's discretionary determination whether or not to award attorney's fees and of the amount of [any] award." *Ferguson v. Ferguson*, 639 So. 2d 921, 937 (Miss. 1994) (*quoting Geiger v. Geiger*, 530 So. 2d 185, 187 (Miss. 1988)). Where a party is financially able to pay her attorney's fees, an award of attorney's fees is not appropriate. *Smith*, 614 So. 2d at 398. "Though the general rule in Mississippi is that if a party is financially able to pay his attorney's fees he should do so, this is a matter which is entrusted to the chancellor's sound discretion." *Pittman v. Pittman*, 652 So. 2d 1105, 1111 (Miss. 1995).

¶48. The chancellor was presented with evidence, both testimonial and documentary, of Susan's ability to pay at the trial. This Court does not find an abuse of discretion on the part of the chancellor in denying attorney's fees to Susan. Therefore, this issue is without merit, and the chancellor's decision is affirmed.

## CONCLUSION

¶49. The chancellor correctly terminated alimony based on the misconduct of the wifebased on the prior rulings of this Court in *Hammonds and Ellis*. Susan was supporting her paramour by allowing him to live in her house and share her bed without paying rent or paying for any utilities. By finding the husband's reduction in income as a material change in circumstances not anticipated at the time of the divorce, the chancellor correctly reduced the amount paid each month in child support. The denial of attorney's fees was proper. Therefore, the decision of the chancellor is affirmed.

¶50. JUDGMENT IS AFFIRMED.

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR.**

1. There is an earlier decision of *Hammonds v. Hammonds*, 597 So. 2d 653 (Miss. 1992). In that case this Court determined that the fault of former spouse is not a complete bar to receiving alimony so that at least she will not become destitute. *Id.* at 655.

2. Miss. Code Ann. § 43-19-101.