724 So.2d 1098 (1998)
Luke L. JAMES, Appellant,
v.
Frances C. JAMES, Appellee.
No. 97-CA-00242 COA
Court of Appeals of Mississippi.
December 18, 1998.
S. Christopher Farris, Hattiesburg, Attorney for Appellant.
Richard Hamilton, Pascagoula, Attorney for Appellee.
BEFORE THOMAS, P.J., COLEMAN, AND HINKEBEIN, JJ.
COLEMAN, J., for the Court:
¶ 1. In its judgment granting the appellant and appellee a divorce on the grounds of irreconcilable differences rendered on May 20, 1993, the Chancery Court of Hancock County ordered the appellant, Luke L. James to pay his wife, Frances C. James, the appellee, "the sum of $1,500.00 per month as periodic alimony beginning March 1, 1993...." More than two years later, Mr. James filed a petition for modification in which he "request[ed] that the Court terminate his alimony obligation or in the alternative reduce it to $250.00 per month." Pursuant to a hearing on Mr. James's petition for modification, the chancellor entered a judgment nunc pro tunc on January 21, 1997, in which he reduced Mr. James's alimony payment from $1,500 per month to $1, 300 per month beginning November 1, 1996. Mr. James's only issue in this appeal is the following, which we quote verbatim from the statement of issues contained in his brief:
THE TRIAL COURT ERRED IN NOT ALLOWING THE PLAINTIFF A GREATER REDUCTION IN HIS ALIMONY OBLIGATION BASED UPON THE SUBSTANTIAL WEIGHT OF THE EVIDENCE.
*1099 We affirm the judgment nunc pro tunc of the Chancery Court of Hancock County.

I. FACTS
¶ 2. Mr. James and Mrs. James married on June 23, 1961. When they separated in July of 1991, the Jameses were living in Venezuela, where Mr. James was employed by Diamond Offshore Management Co. According to Mr. James's W-2 for 1993, the year in which the chancery court granted the Jameses their divorce, Mr. James's total compensation was $113,992.98. Included in this sum were his employer's payment of Mr. James's housing, utilities, and automobile expenses as "benefits" totaling $38,687. However, Mr. James's federal income tax return for 1993 indicated that he received a foreign earned income deduction of $79,126. That deduction combined with other deductions and credits resulted in Mr. James's paying no federal income tax for the year 1993. He paid state income tax to Mississippi in the amount of $3,655 and other tax in the amount of $18,816 to Venezuela. In 1993, Ms. James reported earnings paid by Bill's Dollar Stores, Inc., in the amount of $2,378; thus, Ms. James did not pay tax on her income to the United States or to Mississippi.
¶ 3. After the chancery court granted the Jameses their divorce on May 20, 1993, Mr. James continued to work in Venezuela and later in Vietnam, where he continued to receive income exceeding $100,000 annually and to enjoy a foreign earned income deduction. However, in 1996 his employer transferred Mr. James to Houston, Texas, where he began working in the domestic division of his employer. With Mr. James's transfer to Houston came a marked reduction in his income. According to his employer's statement of income, Mr. James earned $6,697.43 per month, or $80,369.16 annually. Mr. James's transfer to the domestic division of Diamond Offshore and his return to Houston resulted in his loss of the foreign earned income deduction. Mr. James married a second time and had a new daughter by 1996. After the divorce, Ms. James returned to her former employment as a store manager, only now she worked for Dollar Tree Stores, Inc. According to Ms. James's W-2 form for 1995, Dollar Tree Stores paid her $22,954.87 in that year.

II. POST-DIVORCE LITIGATION
¶ 4. The record contains the chancellor's bench opinion which he rendered on March 1, 1993, precedent to his entry of the judgment of divorce dated May 20, 1993. In his bench opinion, the chancellor opined, "Should Mr. James ... change jobs or come back from Venezuela and take a stateside job earning substantially less, then a motion to modify any periodic alimony certainly would be appropriate." Mr. James filed a petition for modification on October 10, 1995, in which he requested the chancery court to "terminate his alimony obligation or in the alternative reduce it to $250.00 per month." Mr. James based his request on "a material change in circumstances that has adversely affected [his] ability to meet his monthly obligation of $1,500.00 as alimony...." Mr. James included in his material change in circumstances the following facts: (1) his remarriage, to which his seven-month-old daughter had been born, (2) his loss of "a substantial amount of fringe benefits [including] housing paid for, automobile paid for, [and] no tax liability," (3) his base salary of $80,000 "from which he will be required to pay all of his housing expenses, taxes, [and] automobile expenses....," and Ms. James's "making a substantial salary that she was not making at the time of the divorce" because she was "presently employed as a manager of a store." Ms. James responded to her former husband's petition for modification by filing her response to it, in which she generally denied her husband's allegations. She also filed a "counter-complaint," in which she counterclaimed for her attorney's fees.
¶ 5. Mr. and Ms. James were the only witnesses who testified during the hearing which the chancery court conducted on Mr. James's petition for modification and Ms. James's response and "counter-complaint." Mr. James introduced into evidence the deposition of his certified public accountant regarding Mr. James's personal income and tax liabilities for the years 1993, when the Jameses were divorced, through 1996, the year in which the chancery court heard this *1100 case. We reserve further review of their testimony for our analysis and resolution of Mr. James's issue which he presents to us in this case.
¶ 6. Pursuant to its hearing on the merits of the Jameses' pleadings, the chancellor entered a judgment nunc pro tunc in which he found that Mr. James's "1996 projected gross income [was] $68,053.00" and that Mr. James would "have to pay $8,402.00 in state and federal income tax for a net income of $59,651.00 or $4,970.91 per month." About Ms. James's income the chancellor found that she had "a gross monthly income of $2,000.00 and approximate net disposable income of $1,500.00." Based upon his findings of respective income for Mr. and Ms. James, the chancellor concluded that there had been a material and substantial change in their circumstances and then adjudicated as follows:
The net income of the petitioner, Luke L. James, as determined in the original hearing has remained approximately the same. However, he no longer has the benefits that he had while he was working overseas such as housing, utilities and a provided automobile. The respondent, Frances C. James, has had an increase in her monthly income of $667.00 per month or approximately a 45% increase. Therefore, the Court finds that the previous judgment entered in the cause should be modified by decreasing [Mr. James's] monthly alimony payments from $1,500.00 per month to $1,300.00 per month beginning November 1, 1996 and on the first day of each month thereafter until further order of the Court.
¶ 7. The chancellor also found that Mr. James was "in arrears in the payment of his alimony in the amount of $6,000.00," and thus found Mr. James to be "in civil contempt of this Court" and awarded unto Ms. James a judgment in the amount of $6,000. The chancellor further ordered that Mr. James pay alimony to his former wife at the new rate of $1,300 per month "until [Ms. James] remarrie[d] or until further order of [the] Court."
¶ 8. The purpose of Mr. James's appeal from the judgment is to assert that the chancellor erred by not allowing him "a greater reduction in his alimony obligation based upon the substantial weight of the evidence."

III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUE

A. The Jameses' arguments
¶ 9. Mr. James's certified public accountant's deposition was introduced into evidence. His accountant opined about the consequences of Mr. James's loss of the foreign income deduction and housing and automobile expenses, which his employer had previously paid, after Mr. James returned to Houston, Texas to begin working in the domestic division of Diamond Offshore Drilling. Mr. James's accountant was of the opinion that Mr. James had sustained a fifty percent reduction in his income. Ms. James, however, had sustained a forty-five percent increase in her income since the Jameses' divorce in 1993 because she had returned to working as a store manager. Mr. James argues that the chancellor did not consider: (1) his accountant's testimony that his income had been reduced by fifty percent, (2) the forty-five percent increase in Ms. James's income which she realized from her return to working as a store manager for Dollar Tree Stores, or (3) his recently imposed duty to support his new daughter born to his second marriage. James contends that the chancellor's reduction of the monthly amount of alimony which he paid his former wife by only $200 was against the substantial and overwhelming weight of the evidence.
¶ 10. Ms. James counters by "respectfully suggest[ing] that the ... chancellor was not manifestly wrong in his assessment of monthly payments against [Mr. James]." She further asserts that "[n]othing was adduced by [Mr. James] at trial contrary to the findings of the chancellor." Thus, Mr. James has shown nothing that "can lead to the conclusion that the chancellor was manifestly wrong."

B. Standard of Review
¶ 11. Our review is limited in domestic relations cases where the chancery court has decided upon alimony; the trial court's determination *1101 will not be altered on appeal unless we find it to be against the overwhelming weight of the evidence or manifestly in error. Ethridge v. Ethridge, 648 So.2d 1143, 1145-46 (Miss.1995); Crowe v. Crowe, 641 So.2d 1100, 1102 (Miss.1994); Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992). "[T]he amount of an alimony award is a matter largely within the discretion of the chancery court because of its peculiar opportunity to sense the equities of the situation before it." Wood v. Wood, 495 So.2d 503, 506 (Miss.1986). We afford the chancellor wide discretion in alimony cases, and this discretion will not be reversed on appeal unless the chancellor was manifestly in error in the findings of fact or there was an abuse of the court's discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 12. In regard to the chancellor's findings of fact, the reviewing court will not "disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Turpin v. Turpin, 699 So.2d 560, 564, ¶ 14 (Miss.1997); Anderson v. Anderson, 692 So.2d 65, 72 (Miss.1997). All reasonable inferences which favor the trial court's decision will be accepted. Anderson, 692 So.2d at 70. Therefore, the reviewing court will not disturb the chancellor's conclusions, "notwithstanding that we might have found otherwise as an original matter" if substantial evidence exists to support his fact-findings. Dunn v. Dunn, 609 So.2d 1277, 1284 (Miss.1992); See also Turpin v. Turpin, 699 So.2d 560, 564 (¶ 14) (Miss.1997); Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990).

C. Resolution of the issue

1. General Discussion
¶ 13. By statute, the chancellor is vested with the authority to modify a divorce decree and make "new decrees as the case may require." Miss.Code Ann. § 93-5-23 (Supp.1998). Periodic alimony may be modified by increasing, decreasing, or terminating the payments. Hubbard v. Hubbard, 656 So.2d 124, 129 (Miss.1995); Shearer v. Shearer, 540 So.2d 9, 12 (Miss.1989). In limiting the chancellor's authority to modify divorce decrees, the supreme court has repeatedly held the petitioner must show a material change in circumstances arising after the original decree was entered in order to justify the modification of a divorce decree. See, e.g., Anderson v. Anderson, 692 So.2d 65, 70 (Miss.1997); Varner v. Varner, 666 So.2d 493, 497 (Miss.1995); Morris v. Morris, 541 So.2d 1040, 1042-43 (Miss.1989). This material change must be a change "that could not have been anticipated by the parties at the time of the original decree." Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss.1990). The supreme court has observed that circumstantial changes occurring within a short time after entry of the original decree may be reasonably anticipated and do not justify modification. Morris v. Morris, 541 So.2d 1040, 1043 (Miss.1989).

2. Factors that are relevant to the award and modification of alimony
¶ 14. The Mississippi Supreme Court detailed the factors to be considered in reviewing alimony awards in the Brabham case:
This Court long has followed the factors enumerated in Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 153 (1955), when reviewing the appropriateness of an award or denial of alimony. Therefore, we consider the health and earnings capacity of the husband; the health and earning capacity of the wife; all sources of income of both parties; the reasonable needs of the wife; the reasonable needs of any children; the husband's necessary living expenses; the estimated income taxes each party must pay; the provisions made for the wife's use of the house, furnishings and automobile; such other facts and circumstances in evidence that might have a bearing on the matter. Tilley v. Tilley, 610 So.2d 348, 353 (Miss.1992); Brabham, 226 Miss. at 176, 84 So.2d at 152-53. Further, we must look at the burden placed on ... the paying spouse, as well as his right "to lead as normal a life as possible with a decent standard of living." Brendel v. Brendel, 566 So.2d 1269, 1272 (Miss.1990); Massey v. Massey, 475 So.2d 802, 803 (Miss.1985). *1102 Chapel v. Chapel, 700 So.2d 593, 598, ¶ 25 (Miss.1997). In 1993, the supreme court elaborated on the Brabham factors in the Armstrong case:
The following factors are to be considered by the chancellor in arriving at findings and entering judgment for alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993) (citing Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992)). The supreme court has continued to refer to the Armstrong factors in determining whether the chancellor has considered the facts relevant to specific cases. See, e.g., Richard v. Richard, 711 So.2d 884, 890 (¶ 27) (Miss. 1998); Anderson v. Anderson, 692 So.2d 65, 70 (Miss.1997); Overstreet v. Overstreet, 692 So.2d 88, 91 (¶ 8) (Miss.1997); Ethridge v. Ethridge, 648 So.2d 1143, 1146 (Miss.1995). Not only must the chancellor consider the Armstrong factors in initially determining whether to award alimony and the amount of the award, but the chancellor should also consider the Armstrong factors in deciding whether to modify periodic alimony, comparing the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree. Anderson, 692 So.2d at 65.

3. The chancellor's application of these factors in the 1993 judgment of divorce
¶ 15. In reviewing the case sub judice, we examine the lower court's application of the Armstrong factors first in awarding periodic alimony to Ms. James and then in modifying that award. In the initial divorce judgment of May 26, 1993, the chancellor recited in great detail the facts that he considered in ordering Mr. James to pay Ms. James alimony at the rate of $1,500 per month. He noted the age of the parties and mentioned that both parties enjoyed relatively good health. He made specific findings regarding the income and earning capacity of the parties, finding that Mr. James earned approximately $103,000 per year and benefits and that Ms. James was unemployed but capable of earning a gross pay of $1,333 per month. The parties were married and lived together for thirty (30) years before they separated, and no minor children continued to live in the home of either party. The chancellor apparently considered the tax consequences of requiring Mr. James to pay periodic alimony, and he specifically ordered that "the periodic alimony payments are to be taxable to Ms. James'[s] income and deductible to Mr. James; that income being a form of alimony." Because the parties divorced on the grounds of irreconcilable differences, fault was not an issue. The chancellor did not indicate any findings that either party had wastefully dissipated marital assets.
¶ 16. However, this Court cannot readily discern the basis or rationale for the chancellor's finding in the 1993 judgment awarding the Jameses their divorce that Mr. James's net income totaled $4,900 or less per month when his total income for the year 1993 exceeded $113,000, including his employer's payment of his housing and automobile expenses in an amount greater than $38,000. In his brief, Mr. James acknowledges that he "did not question the award because in 1993, he was financially able to pay the award."

*1103 4. The chancellor's application of these factors in the 1997 judgment nunc pro tunc

¶ 17. In the 1997 judgment nunc pro tunc, the chancellor acknowledged that his calculation of Mr. James's net income in the amount of $4,900 or less per month occurred "through error or misleading testimony or documentary evidence." Significantly, Mr. James's actual gross income was $113,872 in 1993, $107,764 in 1994, and $117,770 in 1995. Therefore, his average net pay for the three years prior to his request for modification was $9090 per month, approximately 85% more than the chancellor estimated.
¶ 18. Mr. James asserts on appeal that his net monthly income totaled $3,013.42 per month at the time of the hearing, a fact to which he testified during the hearing. However, his income and expense statement which he filed in accordance with Uniform Chancery Court Rule 8.05 disclosed that James deducted relocation costs of $1,317.78 as a monthly deduction even though he relocated only once to Houston in 1994. He also deducted the $682 per month that he contributed to his mandatory retirement account. Without these two deductions, Mr. James's net income became $5,013.20 per month. Mr. James also included two rent/mortgage payments which he made each month, but Mr. James testified that he had placed his home in Bay St. Louis on the market for sale. Again, according to his income and expense statement, if he sold his home in Bay St. Louis, his monthly expenses would be lessened by at least $859.
¶ 19. In the 1997 judgment nunc pro tunc, the chancellor found James's net income at the time of the hearing to have been $4,970.91 per month. Mr. James contends that the trial judge disregarded the report of James's certified public accountant, but based upon the chancellor's acknowledgment in the judgment nunc pro tunc that his calculation of Mr. James's net monthly income at $4,900 or less occurred "through error or misleading testimony or documentary evidence," this Court suspects that the chancellor may have been wary of Mr. James's accountant's opinion that his client's income had been reduced by fifty percent by Mr. James's transfer from Vietnam to Houston.
¶ 20. James suggests that his alimony obligation should have been reduced more substantially because he now has a small child by his second wife. In De Marco v. De Marco, 199 Miss. 165, 168, 24 So.2d 358, 359 (Miss.1946), the husband began to pay his former wife only one-half of the monthly alimony which the chancery court originally ordered without first obtaining the chancery court's approval. When the former wife resubmitted the question of alimony to the court for readjustment, the husband offered the defense that he had remarried and now had "a wife to support, who under the law [was] entitled to support and maintenance and whose position ... [came] prior to the claims of [his former wife]." De Marco, 199 Miss. at 167, 24 So.2d at 359. The Mississippi Supreme Court rejected the husband's argument: "Suffice it to say that generally one cannot relieve himself from the payment of alimony according to the provisions of a divorce decree by the obligations imposed upon him by a second marriage." De Marco, 199 Miss. at 168, 24 So.2d at 359. The supreme court continued, "[G]enerally, the claim of the divorced wife, under alimony award, on [the divorced husband's] earnings takes precedence over that of the second wife." Id.
¶ 21. Thus, the alimony award constitutes a prior claim on his income. Gregg v. Montgomery, 587 So.2d 928, 932 (Miss.1991). In Kincaid v. Kincaid, 213 Miss. 451, 456, 57 So.2d 263, 265 (1952), the supreme court held that a husband could not ask for modification of the decree unless he could show that he fulfilled his obligation to pay or that it was "wholly impossible" for him to pay the alimony. Furthermore, according to the Kincaid court, to prove his inability to pay, James would have to prove "with particularity and not in general terms" that he earned all that he could, that he lived economically, and that he paid all money above what he needed for living on the alimony owed to his former wife. Kincaid, 213 Miss. at 456, 57 So.2d 263. Following Kincaid, the court in Taylor v. Taylor, 348 So.2d 1341, 1343 (Miss.1977), held that a husband could not request a *1104 modification to reduce decreed alimony if he could not show in "particular and not general terms" that he had complied with the decree or that it was impossible to fully comply with the decree. Gregg, 587 So.2d at 932; See Hooker v. Hooker, 205 So.2d 276, 278 (Miss. 1967) ("husband may not petition for modification of the original decree without showing either that he has performed it or that his performance has been wholly impossible" and "his evidence must be made with particularity and not in general terms").
¶ 22. The court has continued to apply the rules stated in the Gregg case. See, e.g., Varner v. Varner, 666 So.2d 493, 497 (Miss. 1995) ("[p]ersonal bills cannot be used as a factor to reduce support payments"); Parker v. Parker, 645 So.2d 1327, 1328 (Miss.1994) (distinguished on the facts, but maintains the rule that the payment of other expenses will not excuse default because alimony payments are paramount). From our review of these precedents, we conclude that Mr. James's reliance on his having fathered a daughter by his subsequent wife as a factor to be considered by the chancellor is misplaced and that, therefore, the chancellor did not err if he indeed refused to consider it as Mr. James alleges.
¶ 23. Mr. James also asserts that the increase in Ms. James's income since the divorce justifies termination or reduction of his alimony obligation. To support this assertion, he cites Spradling v. Spradling, 362 So.2d 620, 623 (Miss.1978), which provides that the chancery court should consider a substantial increase in the alimony payee's earning between the time of the divorce and the request for modification. As the court noted in Spradling, the objective of the law of alimony is not to penalize a party for "being industrious and endeavoring to accomplish something rather than depend on [the paying spouse] regardless of future circumstances." Id. at 624. Furthermore, the court stated that, in the Spradling case, the increase in earnings of the party receiving alimony did "not rise to a substantial change of circumstances sufficient to modify the alimony payments." Id.; see Hockaday v. Hockaday, 644 So.2d 446, 450 (Miss.1994) (opining that one party's having become employed and therefore having some income other than alimony does not constitute "such a substantial change in circumstances as to warrant a permanent reduction or termination of periodic alimony").
¶ 24. The chancellor determined that Ms. James's gross monthly income increased from the $1,333 projected in the 1993 judgment granting the divorce to $2,000 at the time of the modification, but it should also be noted that Ms. James's net income remains significantly lower than Mr. James's net income. In Austin v. Austin, 557 So.2d 509, 510 (Miss.1990), the supreme court opined that the trial court was manifestly in error when the chancellor modified alimony because the recipient spouse obtained full-time employment. Finding that the husband who was initially ordered to pay alimony was affluent and maintained a high standard of living in spite of lavishly supporting six children, the court noted that both parties knew that the recipient wife would secure employment after the divorce. Id. Furthermore, the court observed that the paying husband's monthly living expenses exceeded the yearly alimony he paid to his first wife, who had provided him with four children. Id; see Bridges v. Bridges, 330 So.2d 260 (Miss.1976) (where wife petitioned for separate maintenance, wife was entitled to same standard of living she enjoyed before separation).
¶ 25. This Court concludes that the chancellor considered Ms. James's increase in income which resulted from her re-employment as a store manager after her divorce which is reflected in the chancellor's reduction of Ms. James's monthly receipt of alimony from $1,500 to $1,300.

IV. CONCLUSION
¶ 26. This Court finds Ms. James's argument persuasive in our resolution of the one issue which Mr. James has presented in his appeal. We detect neither manifest error nor an abuse of discretion in the chancellor's reduction of Mr. James's payment of permanent alimony to Ms. James from $1,500 to $1,300. We are unpersuaded by Mr. James's suggestion that the chancellor failed to consider certain factors deemed by the Mississippi Supreme Court to be relevant in proceedings *1105 to modify the award of alimony. Instead, we find that the chancellor appropriately considered these factors in a manner that was supported by substantial evidence and thus was not against the overwhelming weight of the evidence as Mr. James argues. Therefore, this Court affirms the judgment nunc pro tunc rendered by the Hancock County Chancery Court on January 21, 1997, and assesses the costs of this appeal to the appellant, Luke L. James.
¶ 27. THE JUDGMENT OF THE HANCOCK COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT, LUKE L. JAMES.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.