767 So.2d 277 (2000)
David GRAHAM, Appellant,
v.
Junita L. GRAHAM, Appellee.
No. 1999-CA-00538-COA.
Court of Appeals of Mississippi.
August 22, 2000.
*278 J. Elmo Lang, Pascagoula, Attorney for Appellant.
BEFORE McMILLIN, C.J., LEE, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. Appellant David Graham and Appellee Junita L. Graham were granted an irreconcilable differences divorce. The Jackson County Chancery Court ordered David Graham to pay Junita Graham $500 per month permanent alimony and $7,250 from his retirement account. Aggrieved, Appellant cites the following issues on appeal:
*279 I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING $500 PER MONTH IN PERIODIC ALIMONY; AND
II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING JUNITA L. GRAHAM $7,250 FROM THE RETIREMENT FUND OF DAVID GRAHAM
We reverse and render the alimony award and affirm the award of $7,250 from David Graham's retirement account.

FACTS
¶ 2. Appellant David Graham and Appellee Junita L. Graham were married in March 1977. They separated in 1991 or 1992, approximately fourteen to fifteen years later. On July 8, 1998, approximately seven years after their separation, David initiated divorce proceedings. David charged Junita with desertion. Junita counterclaimed, alleging habitual cruel and inhuman treatment or alternatively irreconcilable differences. Before trial, David and Junita agreed to an irreconcilable differences divorce and left disposition of the financial matters to the chancellor. Junita sought child support for their twenty-year-old daughter, settlement proceeds from David's pending asbestos lawsuits, alimony, and a portion of David's retirement account.
¶ 3. Upon hearing testimony that the parties' daughter was not in school, was working forty hours per week, and had a baby of her own, the chancellor ruled that the daughter was emancipated and denied Junita's request for child support. The chancellor noted that Junita never requested child support during the period she and David were separated. The chancellor further ruled that Junita was not entitled to any portion of settlement funds David received from his asbestos lawsuits. The chancellor awarded Junita $500 per month in permanent alimony. The chancellor added David's and Junita's retirement accounts together and then divided the total in half. Giving David credit for one-half of Junita's retirement account, the chancellor ordered David to pay $7,250 from his retirement account.

LAW AND ANALYSIS
¶ 4. As a threshold issue we note that Junita did not file a brief or otherwise oppose this appeal. In Jackson v. Walker, 240 So.2d 606 (Miss.1970), the court reversed and rendered a case in which the appellee failed to file an appellate brief, holding:
The failure to file this brief (by the appellee) is tantamount to a confession of error, and will be accepted as such, and the judgment of the court below will be reversed, since an answer to the appellant's brief cannot be safely made by us, without our doing that which the appellee, by its attorney, should have done, i.e., brief the appellee's side of the case. This we are not called on to do....
Id.
¶ 5. In Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997), the court, noting that the appellee failed to file a brief, stated: "We have held that `[f]ailure to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of appealing party, that there was no error.'" Id. (citing Dethlefs v. Beau Maison Dev. Corp., 458 So.2d 714, 717 (Miss.1984)).
¶ 6. While failure to file a brief is tantamount to a confession of error:
Automatic reversal is not required where the appellee fails to file a brief. The appellant's argument "should at least create enough doubt in the judiciousness of the trial court's judgment that this Court cannot `say with confidence that the case should be affirmed.'" Where the appellant's brief makes out an apparent case of error, however, this Court is not obligated to *280 look to the record to find a way to avoid the force of the appellant's argument.
Selman v. Selman, 722 So.2d 547, 551 (Miss.1998) (internal cites omitted). With these guiding principals in mind, we consider whether David's brief makes out an apparent case of error.

I. DID THE TRIAL COURT ABUSE ITS DISCRETION BY AWARDING $500 PER MONTH IN PERIODIC ALIMONY?
¶ 7. Alimony awards are within the chancellor's discretion, and we may not reverse unless we find the chancellor committed manifest error in his findings of fact and abused his discretion. Ethridge v. Ethridge, 648 So.2d 1143, 1145-46 (Miss. 1995). We will not disturb a chancellor's findings of fact if they are supported by credible evidence in the record. Id. at 1146. To determine whether to award permanent periodic alimony, the chancellor must consider the twelve factors enunciated in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 8. The chancellor in the case sub judice recited the Armstrong factors in his oral ruling, but did not explain which factors justified his alimony award to Junita. Junita earns approximately $33,000 per year as an electrical supervisor at Ingall's Shipyard. During the parties' seven-year separation, which Junita initiated, Junita never petitioned the court for child support or alimony. While Junita's financial statement indicates her monthly expenses exceeded her monthly income, the chancellor did not inquire into the necessity of these expenses, and Junita did not explain why she could not financially manage on $33,000 per year. In determining whether to award alimony, the "chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living." Gray v. Gray, 562 So.2d 79, 83 (Miss.1990). Further, "[a]limony is not a bounty to which [the wife] became entitled to receive indefinitely simply by reason of the fact that at one time she had been married to [the husband]." Beacham v. Beacham, 383 So.2d 146, 148 (Miss.1980). Junita was obviously able to manage without financial support from David given that she never petitioned for support during their lengthy separation. David's brief creates enough doubt in the judiciousness of the chancellor's judgment that we cannot say with confidence that the alimony award should be affirmed.
¶ 9. We are further disturbed that the chancellor did not consider fault in making the alimony determination. David and Junita agreed to an irreconcilable differences divorce; therefore, fault was not an issue in the actual divorce proceedings. However, "[a]llowing evidence of fault in an alimony determination is a factor specifically listed in Armstrong. Nothing in that case indicates such a factor may only be considered in a fault-based divorce." Driste v. Driste, 738 So.2d 763, 765 (Miss.Ct.App. 1998).
¶ 10. Junita left the marital domicile and procured living quarters for herself and her daughter. The supreme court has held:
"Under the law of this State, in the absence of evidence showing that [the wife] is ill, or that there was some other legitimate compelling reason requiring her to live separate and apart from her husband[the husband] is not required to pay her alimony, separate maintenance, or to support her, so long as she wrongfully refuses to return to her conjugal duties."
Cox v. Cox, 183 So.2d 921, 924 (Miss.1966). We are aware that fault is not always an absolute bar to alimony. Hammonds v. Hammonds, 597 So.2d 653, 654 (Miss.1992) (citing Retzer v. Retzer, 578 So.2d 580, 593 (Miss.1990)). However, in cases where alimony is awarded to a spouse at fault, it is "not to enable the wife to maintain the lifestyle to which she had been accustomed, but to prevent her from destitution." *281 Id. In the case sub judice, there is no evidence that Junita would be rendered destitute by denial of alimony.
¶ 11. Given that the chancellor did not inquire into Junita's reasonable need of support, and that he did not consider Junita's fault for alimony purposes, we find that David made an apparent case of error on the alimony issue. We deem Junita's failure to file a brief a confession of error and hereby reverse the alimony award and render judgment in David's favor.

II. DID THE TRIAL COURT ABUSE ITS DISCRETION BY AWARDING JUNITA L. GRAHAM $7,250 FROM THE RETIREMENT FUND OF DAVID GRAHAM?
¶ 12. David argues that the chancellor should have looked at the value of his and Junita's retirement funds at the time of their separation and not at the time of the divorce; however, David cited no authority to support this assertion. The Mississippi Supreme Court "has consistently held that an unsupported assignment of error will not be considered." Ellis v. Ellis, 651 So.2d 1068, 1072 (Miss. 1995). Even had David cited authority to support this assertion, there was no evidence regarding the value of the parties' respective retirement funds as of the separation date. David did not make an apparent case of error.
¶ 13. Given the concern Judge Irving raised in his separate opinion, we will address the merits of this issue. Judge Irving directs our attention to Godwin v. Godwin, 758 So.2d 384 (Miss.1999), a recent Mississippi Supreme Court case which is similar to the case sub judice. In Godwin, the court affirmed the chancellor's decision to consider the husband's retirement account as separate property where the husband began contributing to the account several years after an order for separate maintenance had been entered. The court stated:
It is true, of course, that neither the Legislature nor this Court has ever recognized the concept of a "legal separation" in this State's divorce law, and we do not do so in this case. However, an order for separate maintenance is recognized and is viable. Under the circumstances of this case, the order creates a point of demarcation with respect to the parties and their estates.
Id. at (¶ 6) (emphasis added).
¶ 14. The case sub judice differs from Godwin in two respects. First, the parties' respective retirement accounts were in existence before the separation; David simply asked the chancellor to consider his post-separation contributions as separate property. Second, there was no separate maintenance order in the present case. Unlike Godwin, there was no clear line of demarcation as to what date David and Junita ceased being a family unit. There is a separation date to which both parties agree; however, the parties continued to have financial ties. Specifically, Junita kept David on her medical insurance policy during the separation period, and David filed a claim on the policy after the separation. Further, there was evidence at trial that before the parties' separation, Junita had withdrawn approximately $5,000 from her retirement account to pay marital expenses during a period when she and David were both unemployed. Considering these facts, we can find no error in the chancellor's finding that the parties' retirement accounts should be equally divided. Thus, we affirm.
¶ 15. JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT AWARDING JUNITA GRAHAM $500 PERIODIC PERMANENT ALIMONY IS HEREBY REVERSED AND RENDERED AND JUDGMENT AWARDING JUNITA GRAHAM $7,250 FROM DAVID GRAHAM'S RETIREMENT FUND IS AFFIRMED. COSTS OF APPEAL ARE TO BE EQUALLY DIVIDED BETWEEN APPELLANT AND APPELLEE.
*282 McMILLIN, C.J., LEE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURRING IN PART, DISSENTING IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING AND SOUTHWICK, P.JJ., AND BRIDGES, J. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.
PAYNE, J., dissenting:
¶ 16. As I respectfully disagree with the majority's disposition of this matter, both procedurally and substantively, I must dissent. First, regarding the majority's discussion of the failure to file rule, I believe that if Junita's failure to answer David's appeal amounts to a confession of error, as it well could be under our law and those precedents cited by the majority, then her failure to file a brief works to her disadvantage in toto and not as we, as a reviewing court, may selectively decide. While a horrible result would flow from such an action, by referencing our cases on the appellee's failure to file a brief, I think it a better course of action to reverse and render on both issues.
¶ 17. Nevertheless, assuming that the majority is correct in its piecemeal application of the failure to file a brief rule, I would find that the alimony award was appropriate. David has not set out an apparent case of error. Alimony is not punishment to a payor and should not be awarded as such. Welch v. Welch, 755 So.2d 6 (¶ 31) (Miss.Ct.App.1999); Tilley v. Tilley, 610 So.2d 348, 354 (Miss.1992). Conversely, I believe that alimony should not be denied a recipient for punishment. On this record, I cannot determine that the chancellor afforded too much weight to Junita's alleged fault. The chancellor only seemingly discounted what insignificant evidence he did hear about fault, which is consistent with Driste but not with the more important rule cited in Welch of using alimony as a punitive measure.
¶ 18. The financial statements of the parties showed that David's income surpassed Junita's and that he could comfortably pay this periodic amount. The fact that Junita had not requested temporary support during the couple's separation is irrelevant. David sought the divorce on the fault ground of desertion; Junita did not want an divorce, as evidenced by the record in her colloquy with the chancellor. However, she did eventually consent to a no fault divorce. Junita left the marital domicile in the early 1990s but only after David refused to pay rent on the family home. According to Junita, she was forced to leave so that she and her child would have a place to live. After Junita left, David paid the rent on the marital dwelling for several months before finally moving himself. As Armstrong requires, fault is a factor to be considered in an award of alimony. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). The majority correctly points out that we have previously held that fault is a proper consideration for alimony purposes in no fault divorce cases. Driste v. Driste, 738 So.2d 763, 765 (Miss.Ct.App.1998). However, we stopped short in Driste of making a general pronouncement regarding the consideration of fault for alimony purposes in a no fault marital dissolution; we noted that the chancellor should exercise discretion to limit such testimony. Id. In the case sub judice, though the chancellor noted that he heard no evidence regarding fault because it was an irreconcilable differences divorce, Junita did testify that she left the marital home only after David refused to pay rent. David admitted that he and Junita did not get along and that he invited her to leave if she so desired.
¶ 19. Because I believe the chancellor committed no error, I would affirm. Therefore, I dissent[1].
*283 IRVING, J., concurring in part, dissenting in part:
¶ 20. I agree with that part of the majority's decision to reverse the chancellor's award of alimony to Junita. However, because I also believe the award of a portion of David's retirement to Junita should also be reversed, I must respectfully dissent from that portion of the majority's decision affirming the award.
¶ 21. As noted by the majority, Junita did not file a brief on appeal, yet the majority penalizes David for not citing authority to support his contention that the chancellor should have computed the value of his and Junita's retirement accounts as of the date of separation and not the date of the divorce. At least, David raised the issue on appeal while Junita remained mute. I do not believe we should affirm the chancellor's decision simply because David failed to cite any authority. Rather, we ought to look at the equities involved. Approaching the matter from this perspective will, in my opinion, compel a different result than that reached by the majority.
¶ 22. These parties were separated and living apart for approximately seven years prior to their divorce. It is difficult for me to see how either one could legitimately claim that the increase in the value of their separate retirement accounts occurring during the seven years of their separation should be treated as marital property. Any individual contributions made during this period were certainly made without any tangible or intangible assistance from the other.
¶ 23. The majority concludes that "[e]ven had David cited authority to support this assertion, there was no evidence regarding the value of the parties's respective retirement funds as of the separation date." Majority opinion at page 281. I would not hold that against him since Junita did not present any authority to uphold her award. It seems to me that the fundamental issue here, as it was in the court below, is whether the date of separation or date of divorce is the appropriate date from which to compute the value of retirement accounts in equitable distribution of marital estates when there is a significant period of separation prior to the divorce. This is a question of law. If the applicable date is the date of separation, the fact that no evidence was presented regarding the value as of that date does not authorize the chancellor to make a division computed on the value as of a different date, e.g., the date of the divorce. I believe the equities in this case, at least, argue in favor of computing the value as of the date of separation and not the date of the divorce.
¶ 24. Undergirding the principle of equitable distribution of marital assets at the time of the divorce is the recognition that both parties contributed to the accumulation of the marital assets. Thus, it seems to me that in cases where the evidence is clear that both parties did not contribute to the accumulation of a particular asset acquired during the course of the marriage (in this case, the increased value of David's retirement account), there is no compelling reason for equitable division of that asset. Such a case would be rare except in situations where, as here, the parties were separated for a long period of time prior to filing for divorce. What if, instead of being separated seven years prior to the divorce, the parties here had been separated *284 and living apart for fifteen or twenty years? Should they share equitably in their respective assets acquired during the period of separation simply because they were still married? I think not. I believe the same should be true as to that portion of the value of the parties' respective retirement accounts which can be clearly shown to have vested or appreciated during the extended separation.
¶ 25. I have done some limited research in an effort to ascertain whether there is any existing Mississippi case law directly on point regarding this issue. I did not find a case exactly on point, but Godwin v. Godwin, 758 So.2d 384 (Miss.1999) provides some guidance. In Godwin, the parties were separated in June 1987, and for the next seven years, Mr. Godwin paid separate maintenance to Mrs. Godwin pursuant to a decree for separate maintenance rendered by the court on December 11, 1987. On October 13, 1995, Mrs. Godwin filed for a divorce and sought an equitable share of Mr. Godwin's deferred compensation plan which had been acquired by him during the separation. The Mississippi Supreme Court, in affirming the chancellor's refusal to grant Mrs. Godwin an equitable share of the plan, had this to say:
Assets acquired after an order for separate maintenance should be considered the separate property of the parties, absent a showing of either (1) contribution to the acquisition of the asset by the other spouse as contemplated in our decisions in Ferguson v. Ferguson, 639 So.2d 921, 928-29 (Miss.1994) and Magee v. Magee, 661 So.2d 1117, 1123 (Miss.1995) or, (2) acquisition of the asset through the use of marital property.
There is no evidence in the record that suggests Barbara contributed to Bill's deferred compensation plan with the People's Bank and Trust Company. Bill started contributing to this plan from his income several years after the 1987 order for separate maintenance. The chancellor did not abuse his discretion in finding this asset was Bill's separate property.
Id. at 386.
¶ 26. The Godwin court also noted that "[u]nder the circumstances of this case, the order creates a point of demarcation with respect to the parties and their estates." Id. There is no order for separate maintenance in our case, but I can see no logical reason why that should make a difference in Junita's favor. Separate maintenance is premised on a spouse's obligation to support the non-offending spouse until such time as the offending spouse is willing to restore the other to bed and board. Recognition of the marriage's continual existence is an integral part of the rationale for the grant of separate maintenance. Separation without an award of separate maintenance does not in my view present a less compelling statement of demarcation with respect to the parties and their estates.
¶ 27. The rationale behind equitable distribution of the marital estate is that both parties contributed to the accumulation of the estate. A marriage license alone should not entitled one spouse to share in what the other spouse has accumulated if the accumulation was not the result of joint contributions. When parties are living together, even if one is not working a job outside of the home, both of them contribute in meaningful ways to the total accumulation of the marital assets. When they have been living apart for an extended period of time, with or without a separate maintenance order, there is just simply no rational basis for equitably dividing assets which were acquired during the extended separation unless a nexus can be shown between the acquisition of the asset and the marriage, other than the fact that it was acquired while the parties were still legally married.
¶ 28. If the parties have been separated for only a short period of time, the same equities would not apply. Parties may find it helpful to separate sometimes while they attempt to repair their marriage. *285 Certainly such a separation for such purpose should not serve as a line of demarcation for purposes of dividing up the marital estate if the attempt at reconciliation fails. However, that period of time should be reasonably limited. I doubt many marriages are reconciled after five years of separation.
¶ 29. In the absence of proof that Junita contributed to the increase in the value of David's retirement account during the period of their separation or that David made no contributions himself to the account during the separation, I believe Godwin is persuasive authority for finding the relevant date for valuation of David's retirement account to be the date of separation, not the date of the divorce.
¶ 30. The majority finds support for "equal" division of the parties' retirement accounts in the fact that Junita, during the course of the marriage, withdrew approximately $5,000 from her retirement account to support the family when both she and David were laid off work. That is an argument for treating the retirement accounts as marital assets and making an equitable division of them, a point that is not disputed by this dissent. The question is not whether the retirement accounts are marital assets subject to equitable division, but what valuation date should be utilized to make that division.
¶ 31. The record is clear that the withdrawal was not made during the period of the parties' separation or shared with David. In fact, Junita did not recall when she made the withdrawal, but she knew it was not during the separation. It is reasonable to infer from her testimony that the withdrawal was not even made near the date of the parties' separation, an event in all likelihood she would have remembered. She had been employed at her current employment for twenty-one years. Nevertheless, since the withdrawal was not made during the separation, it should have no bearing on the determination of the date to be utilized for valuation purpose.
¶ 32. The majority also attempts to support its argument that the date of divorce is the proper date for valuation of the marital estate by suggesting that though the parties agreed they had been separated nearly eight years prior to the divorce, they "continued to have financial ties. Specifically, Junita kept David on her medical insurance policy during the separation period, and David filed a claim on the policy after separation." Majority opinion at 281. I have to respectfully say that the record does not clearly support this assertion. It is not entirely clear whether Junita was asserting that David filed on her insurance when he got sick during the marriage from something other than asbestos or whether she was implying that he filed during his recent hospitalization. What is clear from the record is that these parties, according to their testimony, were married in March 1977, separated twice in 1991 and had their final separation in September 1992. After the separation, the parties went their separate ways.
¶ 33. There is absolutely no hint from either David or Junita that they continued to share any financial ties after the separation. In fact, Junita testified that she left David because he would not pay the rent (mortgage) on the house. She said they were evicted, given five days to vacate, so she found some place for her and her daughter to live. David said that as Junita was leaving, she said "she could do bad all by herself." Eventually, the marital domicile was foreclosed.
¶ 34. It strains logic to conclude that Junita would allow David to file on her insurance nearly eight years later when she left the marital domicile because he was not, in her estimation, shouldering his financial obligations to the family. What is a more reasonable interpretation is that she was talking about David's filing on her insurance during the marriage. Junita's answer came in response to a question she was asked following her statement that David had just gotten out of the hospital. *286 It is noteworthy that Junita's answer, interpreted literally, indicates she had been taking care of David before he went in the hospital and that David filed on her insurance to cover the charges of his hospital stay. The record, however, belies any suggestion that Junita took care of David following the separation or immediately before his hospital stay. Finally, I note that during the separation, David purchased another home. Junita did not claim in the court below nor does she claim here that she should receive an equitable share of that property.
¶ 35. For the reasons stated, I respectfully dissent.
KING AND SOUTHWICK, P.JJ., AND BRIDGES, J., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Although not an issue in this case because of Junita's and her counsel's dereliction in not filing a responsive brief nor a cross-appeal, the chancellor below made erroneous findings regarding David's obligation to pay child support and Junita's entitlement to David's personal injury settlements.

First, Junita's failure to request child support from David during the period of the separation in no way impacts the father's duty to support his child. Varner v. Varner, 588 So.2d 428 (Miss.1991). It may well be that Junita, as custodian of the minor child's funds and provider of support for the minor child, would have been entitled to child support for the years of the separation, and this opinion should not be read otherwise.
Second, the chancellor incorrectly stated that Junita had "no claim" to the funds of David's asbestosis settlements. Junita did have a limited claim, as any funds David received to replace his wages or other losses experienced during the marriage are subject to equitable distribution principles. Tramel v. Tramel, 740 So.2d 286 (¶ 17) (Miss.1999).