917 So.2d 95 (2005)
William Lambuth JONES, Appellant
v.
Jacqueline Kuhrtz JONES, Appellee.
No. 2003-CA-01927-COA.
Court of Appeals of Mississippi.
April 5, 2005.
Rehearing Denied June 28, 2005.
*97 Janice T. Jackson, Jackson, attorney for appellant.
James Emory Price, Corinth, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Bill Jones and Jackie Jones are a divorced couple who jointly own their former marital home. At the time of the divorce, the home was in need of substantial maintenance, and those maintenance needs continue. When Bill learned that the homeowners' insurance policy would not be renewed if the premises were not cleaned up to an acceptable condition, he filed a petition to sell the property and divide the proceeds, or alternatively, to compel Jackie to buy Bill's interest in the property. Jackie counter-claimed and requested that Bill contribute to the cost of maintaining the home. The Hinds County Chancery Court denied the relief Bill requested and ordered Bill to pay one hundred percent of all past, present, and future maintenance costs on the former marital home. The chancellor also ordered Bill to pay Jackie's attorney's fees. Bill appeals, raising the following issues:
I. WHETHER THE TRIAL COURT ERRED IN DENYING BILL'S REQUEST TO PARTITION THE FORMER MARITAL PROPERTY
II. WHETHER THE TRIAL COURT ERRED IN GRANTING JACKIE'S REQUEST TO MODIFY ALIMONY
III. WHETHER THE TRIAL COURT ERRED IN ORDERING BILL TO PAY ONE HUNDRED PERCENT OF THE PAST, PRESENT, AND FUTURE MAINTENANCE ON THE FORMER MARITAL HOME
IV. WHETHER THE CHANCELLOR ERRED IN HOLDING THAT THE AWARD OF ALIMONY COULD BE MODIFIED TO THE EXTENT THAT BILL IS LIABLE FOR ALL PAST AND FUTURE MAINTENANCE *98 WHEN BILL CLAIMS TO HAVE BEEN TAKEN BY SURPRISE
V. WHETHER THE TRIAL COURT ERRED IN GRANTING ATTORNEY'S FEES TO JACKIE
¶ 2. Finding reversible error, we reverse and remand in part and reverse and render in part.

FACTS
¶ 3. William Lambuth (Bill) Jones and Jacqueline Kuhrtz (Jackie) Jones were divorced in May 1986. Bill and Jackie had two children together. These children were emancipated in 1996 and 1999, respectively. Under the terms of the marital dissolution agreement, Jackie was awarded "exclusive use and possession of the former marital residence." The agreement stipulated that the property would remain jointly owned by both Jackie and Bill. Bill was required to pay all mortgage payments, taxes, and insurance for the residence, but he was not obligated to contribute to the maintenance of the home. At the time of the divorce, the residence needed substantial repairs, and it continues to need repairs.
¶ 4. After the divorce, the parties continued to engage in litigation. Bill sometimes fell behind in child support, alimony, and medical expense obligations. On July 28, 1992, the chancery court ordered that the mortgage, taxes, and insurance on the former marital home would be shared equally by Bill and Jackie, beginning on October 1, 1992. On November 17, 1994, the chancery court held that the housing agreement between the parties was in the nature of alimony. In that order, the court declared Bill to be in arrears in child support in the amount of $15,695.51 and Bill was ordered to pay that arrearage within thirty days. Jackie was also awarded attorney's fees. No further action was taken on this order. In 1996, the parties disputed the issue of insurance coverage on the house, and the court ruled that Bill was required to provide hazard insurance on the house, but not content coverage.
¶ 5. After the 1996 order, Bill's financial situation improved dramatically. In 1998, Bill's mother passed away, and Bill received a substantial inheritance. Bill inherited a farm, free of any mortgages, which Bill estimated to be worth about $320,000. Bill's annual income also increased substantially. His adjusted gross income was $22,457 in 2001, and it increased to $91,308 in 2003. In the meantime, Jackie claimed that she continued to experience financial trouble due to Bill's failure to make child support payments. When Bill paid his child support arrearage, Jackie testified that the majority of these payments went to pay her former attorney.[1] Jackie alleged that she started living off her credit cards in order to sustain herself due to Bill's non-payment of child support. She accrued $32,000 in credit card debt, which she consolidated in 2001 and for which she was paying $690 per month at the time of trial, with the debt to be fully repaid some time in 2005.
¶ 6. In September, 2002, Bill filed a "Complaint for Modification of Prior Orders of the Court, and to Terminate Joint Ownership of Real Property." This motion was filed when Bill became aware that the City of Clinton had found the house to be a safety and health hazard, that the property had become uninsurable, and that the homeowner's insurance had been cancelled. In this complaint, Bill requested that the former marital residence be partitioned and sold or, in the alternative, that Jackie be required to pay Bill's interest in that residence.
*99 ¶ 7. On April 15, 2003, Jackie filed a counter-claim. She cited three events that she claimed constituted a material change in circumstances. First, Bill's financial situation dramatically improved. Second, the monthly mortgage had been paid in full. Third, the former marital home needed additional substantial repairs which Jackie was unable to afford on her own. She requested that Bill pay her "a monthly amount sufficient to allow her to repair and maintain the former marital residence" and she also requested attorney's fees.
¶ 8. The Hinds County Chancery Court denied Bill's requests for relief and granted Jackie's counter-claim. Bill was obligated to pay one-half of the comprehensive insurance premiums on the house, including content coverage, and divide equally with Jackie the payment of real property taxes. This award was held to be in the nature of alimony. Bill was ordered to pay one hundred percent of all past, present, and future maintenance on the former marital residence, and $4,625 for Jackie's attorney's fees.

ANALYSIS
¶ 9. In domestic relations matters, this Court will not disturb a chancellor's findings "unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994) (citing McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994)).
¶ 10. The following factors are to be considered by the chancellor in arriving at the findings and entering the judgment for alimony: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home; (7) the age of the parties; (8) the standard of living of the parties; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party and (12) any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). "The chancellor is required to consider the Armstrong factors, but if he fails to make an on-the-record analysis of them all, it is not fatal." Curtis v. Curtis, 796 So.2d 1044, 1051-52(¶ 34) (Miss.Ct.App.2001) (citing Selman v. Selman, 722 So.2d 547, 554 (¶ 32) (Miss.1998)).
¶ 11. Alimony associated with the maintenance and support of a former spouse is in the nature of periodic alimony. Cunningham v. Lanier, 589 So.2d 133, 136-37 (Miss.1991). Periodic alimony may be modified subsequent to the decree awarding alimony only in the event of a material change of circumstances. West v. West, 891 So.2d 203, 212 (¶ 21) (Miss.2004) (citing Taylor v. Taylor, 392 So.2d 1145, 1147 (Miss.1981)). "The change must occur as a result of after-arising circumstances not reasonably anticipated at the time of the agreement." Varner v. Varner, 666 So.2d 493, 497 (Miss.1995).
Not only must the chancellor consider the Armstrong factors in initially determining whether to award alimony and the amount of the award, but the chancellor should also consider the Armstrong factors in deciding whether to modify periodic alimony, comparing the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree.
James v. James, 724 So.2d 1098, 1102(¶ 14) (Miss.Ct.App.1998). See also Steiner v. *100 Steiner, 788 So.2d 771, 776 (¶ 16) (Miss. 2001); Anderson v. Anderson, 692 So.2d 65, 72 (Miss.1997).

I. WHETHER THE TRIAL COURT ERRED IN DENYING BILL'S REQUEST TO PARTITION THE FORMER MARITAL PROPERTY
¶ 12. Both parties agree that the former marital home was in disrepair at the time of the divorce. It later became apparent to Bill that the condition of the home was in such poor shape that it was considered a health and safety hazard. In 1998, the City of Clinton sent a letter notifying Bill and Jackie that the condition of the garage was not acceptable to the City Standards, because rubbish was spilling out of it. At trial, the homeowner's insurance agent testified that Alfa Insurance Company did not intend to renew the homeowner's policy as early as 1999. In 2002, Alfa performed an inspection on the premises and found that the home did not meet their underwriting requirement of maintaining pride of ownership. In a letter dated September 11, 2002, Alfa demanded that the premises be cleaned up in an acceptable condition by no later than October 1, or the policy would not be renewed. On September 20, Bill filed his complaint in response to the September 11, 2002, letter. Jackie failed to clean up the property, and the insurance policy was not renewed. Bill claims a material change in circumstances based on the increased liability of the property due to the cancellation of the homeowners insurance and the loss of value to the house due to Jackie's alleged neglect.
¶ 13. The chancellor found that the award of Jackie's exclusive use and possession of the former marital property was in the nature of alimony. The chancellor denied Bill's request to sell the property, because he found that Jackie's alimony award amounted to a life estate in Bill's interest in the house.
¶ 14. The chancellor's decision to deny Bill's request to modify his obligations contains no evidence that he considered the material change in circumstances Bill cites in his motion to terminate alimony. We find error in the chancellor's decision to summarily reject Bill's request for modification without considering whether such material changes had occurred. In addition, the chancellor did not discuss any of the Armstrong factors when he decided that alimony should not be terminated. Particularly relevant in this proceeding is the necessity of determining whether Jackie allowed the former marital home to fall into disrepair, thereby wasting a former marital asset. For these reasons, this Court is compelled to reverse and remand.
¶ 15. Bill argues that Jackie should no longer be entitled to enjoy the exclusive use and possession of the former marital property, because Jackie is no longer in need of such support. In Beacham v. Beacham, 383 So.2d 146, 148 (Miss. 1980), the Mississippi Supreme Court ordered termination of alimony payments based on the ex-wife's good health, the fact that she made a substantial salary, the absence of any dependents, and her prospects for a solid financial future in the form of retirement pay and Social Security. Similarly, in the present case, Jackie earned an income of $51,672 per year at the time of the trial, she was not obligated to support any dependent children, she admitted to having no pressing medical needs, and she is eligible for retirement income from the State in the year 2011. In Beacham, the Court established the following guideline: "Alimony is not a bounty to which [the ex-spouse] became entitled to receive indefinitely simply by the fact that at one time [he or she] had been married." Id. We remand this case *101 to the chancery court so that the chancellor may determine whether Jackie continues to need alimony.
¶ 16. On remand, the chancellor shall also re-consider Bill's request to partition the property. In seeking to partition the former marital home, Bill sought to end the only remaining financial attachment binding him to his former spouse. Distribution of marital property should be accomplished with the goal "to finalize the division of assets and conclude the parties' legal relationship, leaving them each in a self-sufficient state, where the facts and circumstances permit total dissolution." Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).

II. WHETHER THE TRIAL COURT ERRED IN GRANTING JACKIE'S REQUEST TO MODIFY ALIMONY
¶ 17. The chancellor found that Jackie met her burden for proving a material change in circumstances that would justify an increase in alimony. He stated in his opinion, "It is clear from trial exhibits 7, 8, and 9, and the testimony, that Bill has indeed experienced a significant increase in income since the original award of alimony. Jackie, on the other hand, continues to struggle to make ends meet, working three separate jobs in order to pay off an enormous amount of debt incurred over the years when Bill failed for long periods to pay his child support." The chancellor also held that the three changes Jackie cited in her cross-claim constituted a material change in circumstances. Namely, Jackie cited the fact that the mortgage had been paid off, a dramatic improvement in Bill's financial situation, and that Jackie had solely borne the burden of maintenance on the house.
¶ 18. This Court finds an abuse of discretion in the court's holding that the termination of the mortgage constitutes a material change in circumstances that would justify an increase in alimony. After the 1992 order, Jackie and Bill were required to share equally in the mortgage payments; Jackie's contributions were approximately $152 per month. The satisfaction of the mortgage has the effect of providing Jackie and Bill an increase in disposable income. With the mortgage paid, Jackie has more funds to meet her financial obligations.
¶ 19. When the chancellor found that a material change of circumstance existed that justified an increase in Bill's alimony obligations, the chancellor once again failed to consider the Armstrong factors. Although Armstrong demonstrates that the financial status of both parties is a relevant factor in modifying alimony, the chancellor must also compare the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree. James, 724 So.2d at 1102 (¶ 14). The chancellor failed to perform such analysis, and it is necessary for this Court to remand. The chancellor failed to consider Jackie's financial situation in comparison to Bill's financial situation. At trial, she admitted to having nearly $116,000 in assets. She made $11,000 per year at the time of the divorce and made $51,672 at the time of the trial, which represented a 400 percent increase in income. Bill's annual income increased from $58,352 in 1986 to $91,308 in 2002, which represented a 56 percent increase in income. The chancellor should consider this evidence on remand. Also to be considered are Jackie's financial burdens, including her debt payments and her obligations, if any, to repair and maintain the house. These factors are to be analyzed when determining whether a material change of circumstances exists that would justify *102 Bill's obligation to pay for the maintenance on the former marital home.
¶ 20. Jackie claimed a material change in circumstances because she bore the sole burden for maintaining the former marital home. This does not constitute a material change in circumstances, and this Court finds an abuse of discretion in the chancellor's holding. Both parties admit that the home was in disrepair both at the time of the divorce and the time of trial. Although it is true that Bill did not contribute to the cost of the maintaining the home, Bill was not obligated to make such a contribution, and Jackie never asked for such assistance until she filed her counter-claim.
¶ 21. Although Bill's failure to provide support for maintenance of the home is not a material change of circumstances, this Court recognizes the possibility that the large amount of money necessary to keep the home in good repair may not have been foreseeable at the time of the divorce. Jackie paid for a new furnace, for new plumbing fixtures, and to re-paint the home.[2] This Court remands this matter so that the chancellor may determine whether it was foreseeable that Jackie would be required to expend large amounts of money to maintain the former marital home.

III. WHETHER THE TRIAL COURT ERRED IN ORDERING BILL TO PAY ONE HUNDRED PERCENT OF THE PAST, PRESENT, AND FUTURE MAINTENANCE ON THE FORMER MARITAL HOME
¶ 22. Bill avers that the chancellor erred in ordering Bill to pay one hundred percent of all past, present, and future maintenance on the former marital home because it was foreseeable that the house would need repairs at the time of the divorce. On remand, if the chancellor finds that Jackie has failed to prove a change of circumstances unforeseen at the time of the divorce decree, it follows that Bill shall not be ordered to pay for any maintenance on the former marital home. If, upon remand, the chancellor does find that a foreseeable material change of circumstances has existed, the chancellor shall re-evaluate the percentage of maintenance Bill is required to pay, in a manner that is consistent with the holdings of this opinion.

IV. WHETHER THE CHANCELLOR ERRED IN HOLDING THAT THE AWARD OF ALIMONY COULD BE MODIFIED TO THE EXTENT THAT BILL IS LIABLE FOR ALL PAST AND FUTURE MAINTENANCE WHEN BILL CLAIMS TO HAVE BEEN TAKEN BY SURPRISE
¶ 23. Bill alleges that he was unprepared to defend against a claim that could result in a judgment ordering him to pay for all past, present, and future maintenance on the former marital home. He alleges that Jackie's counter-complaint was not specific enough to allow the chancellor to issue such a judgment, and that he was not prepared to defend against such an award as fashioned by the chancery court.
¶ 24. Jackie's counter-complaint requested that "alimony ... be modified to require Bill to pay Jackie a monthly amount sufficient to allow her to repair and maintain that property." Bill alleges that this counter-complaint fails to meet the requirements of Mississippi Rule of Civil Procedure 8(a)(2), which requires that a defendant set forth a claim for relief *103 containing "a demand for judgment or relief to which he deems himself entitled."
¶ 25. In Smith v. Smith, 607 So.2d 122, 127 (Miss.1992), the supreme court held that a party's claim under Rule 8(a)(2) need not contain any magic words. The Smith court held that Rule 8 should be read in conjunction with Rule 54(c), which provides in relevant part, "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings; however, final judgment shall not be entered for a monetary amount greater than that demanded in the pleadings or amended pleadings" Id. (citing M.R.C.P. 54(c)). In her counter-claim, Jackie requested an increase in alimony sufficient to pay for repairs to the former marital home. We hold that this pleading was sufficient to place Bill on notice that the chancellor could order Bill to pay all past and future maintenance.
¶ 26. Bill acknowledges the chancellor may grant "any relief ... which the original bill justifies and which is established by the main facts of the case, so long as the relief granted `will not cause surprise or prejudice to the defendant.'" Crowe v. Crowe, 641 So.2d 1100, 1104 (Miss.1994) (quoting Smith, 607 So.2d at 127). At trial, Bill admitted to knowing that Jackie was seeking to have him held financially responsible for repairs on the former marital residence. Bill attempted but failed to introduce exhibits at trial which contained estimates for the repairs needed on the house. The evidence at trial shows that Bill was prepared to defend against Jackie's counter-claim; there is no indication that the chancellor's holding surprised or prejudiced Bill.
¶ 27. In Smith, the supreme court reversed and remanded with regards to whether the chancellor properly awarded lump sum alimony, but found no pleadings impediment as to the remedy the chancellor fashioned. The supreme court left it to the chancellor's discretion whether the remedy continued to be appropriate, in light of the supreme court's decision to remand. Smith, 607 So.2d at 127. Likewise, we leave it to the chancellor to decide whether the amount of the alimony modification, if warranted, remains appropriate.

V. WHETHER THE COURT ERRED IN AWARDING ATTORNEY'S FEES TO JACKIE
¶ 28. The chancellor granted Jackie's request for attorney's fees and made a single statement justifying this award. "For having to defend against Bill's modification request the Court finds that Jackie is entitled to an award of attorney's fees and all costs of this proceeding." The chancellor also demanded that Jackie's attorney file an affidavit setting forth all of his time and charges, and to submit proof in the form of all the McKee factors. Jackie's attorney's fee affidavit did not assert that Jackie was unable to pay for an attorney but instead mentioned that there was a "great disparity in assets and income" between Jackie and Bill. Jackie's attorney recited information contained from financial statements submitted by the parties. Bill's financial statement showed that he received a net monthly pay of $7,178.66, had assets in the amount of $455,911.92, and liabilities of $18,194.48. Jackie's financial statement reflected a net monthly pay of $2,591.57, assets in the amount of $90,841.81, and liabilities in the amount of $27,625.75.
¶ 29. The question of attorney's fees is a matter largely entrusted to the sound discretion of the trial court. Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988). However, if the record does *104 not demonstrate the ex-wife's inability to pay attorney's fees, then award of the fees is an abuse of discretion. Benson v. Benson, 608 So.2d 709, 712 (Miss.1992). In the present case, the chancellor awarded Jackie's attorney's fees because she successfully defended against Bill's modification request. Jackie's attorney's fee affidavit asserted that attorney's fees were appropriate because of the disparity in income and net worth between Jackie and Bill. Neither the chancellor nor Jackie's attorney mention whether Jackie is actually financially capable of paying her attorney. "If a party is financially able to pay her attorney, an award of attorney's fees is not appropriate." Martin v. Martin, 566 So.2d 704, 707 (Miss.1990). Thus, the appropriate criterion for deciding whether to grant or deny Jackie's attorney's fees is Jackie's ability to pay.
¶ 30. The evidence from the record demonstrates that Jackie is able to pay her attorney. The attorney's fee affidavit claims that Jackie's net worth was in excess of $62,000. Jackie argues that she is unable to pay her attorney because this net worth consists primarily of the equity in her house and her retirement account from the State. In Young v. Young, 796 So.2d 264, 269 (¶ 12) (Miss.Ct.App.2001), the ex-wife argued that she was unable to pay her attorney because she did not have large amounts of cash at her disposal. She obtained a loan to pay her attorney. This Court held that she showed an ability to pay her attorney because she was able to obtain this loan. We held that "not having a cash reserve is not reason enough for attorney fees to be paid by another party." Id. Jackie's substantial net worth affirmatively demonstrates her ability to pay her attorney. We reverse and render the chancellor's award of attorney's fees.
¶ 31. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Jackie was awarded attorney's fees in the 1994 judgment.
[2] There was no testimony regarding the costs of these repairs. All other repairs, including replacing the roof and repairing the ceiling, were paid for by homeowner's insurance.