LEE, P.J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. Robert Justus Sr. (Dr. Justus) and Brenda Lott Justus (Ms. Justus) were granted a divorce based on irreconcilable differences on April 30, 1991. Ms. Justus was awarded alimony in the amount of $3,250 per month. On March 24, 1998, an order was entered by the trial court reducing the alimony to $2,900 per month, reflecting an agreement of the parties. In February 2005, Dr. Justus tiled a complaint in the Lauderdale County Chancery Court for modification of the prior decree and requested, among other things, that the chancellor reduce or eliminate the alimony.
¶ 2. A trial was held, and on May 30, 2007, the chancellor entered an opinion and ordered that the alimony should remain at $2,900 per month. Dr. Justus now appeals the decision of the chancellor, asserting the following issues: (1) the chancellor erred in failing to find a material change in circumstances justifying the reduction or elimination of the alimony; and (2) the chancellor applied an erroneous legal standard to the application of the Armstrong factors. Finding no error, we affirm.
FACTS
¶ 3. Dr. Justus and Ms. Justus divorced after sixteen years of marriage. When the couple divorced, Dr. Justus was thirty-eight years old, and Ms. Justus was thirty-nine. Three children were born of the marriage. At the time of the request for modification of the alimony, Dr. Justus and Ms. Justus were fifty-four and fifty-five years old, respectively. Both parties are healthy and working to them maximum earning capacity.
¶ 4. Dr. Justus and his current wife, Mary Beth, have one child together, who was twelve years old at the time of the order denying modification of the alimony. Mary Beth also has two children from a previous marriage. Dr. Justus operates a periodontal practice in Meridian, Mississippi. The business’s income has varied from year to year. At the time of the divorce, Ms. Justus produced expert testimony from a certified public accountant projecting Dr. Justus’s future income at the Meridian office to range between $240,000 and $300,000. However, from *143 1998 until the request for modification of alimony in February 2005, the income from the periodontal office ranged from approximately $66,000 to $207,000 a year, making his average income $137,000 a year. Dr. Justus attributed the decline in his practice to increased competition in Meridian and fewer referrals of new patients. Dr. Justus owns the building where his clinic is located and rents out the other office spaces. The monthly rental income from the building is $4,000.
¶ 5. Dr. Justus also practices at the Cumberland Dental Clinic in Tuscaloosa, Alabama. He usually travels to the clinic one day a week. He has worked with the Tuscaloosa clinic since 2000 and receives a percentage of the funds collected for his services. He estimates his gross annual income from this clinic is $50,000. In 2001, he became a reserve officer with the Mississippi Ah- National Guard Medical Unit.
¶ 6. The lowest adjusted gross income reported by Dr. Justus and Mary Beth was $174,951 in 1999, and the highest adjusted gross income reported was $318,563 in 2001. A capital gain from the sale of stock increased the couple’s adjusted gross income in 2001. At the time of the request for modification of alimony, Dr. Justus’s average monthly income from his salary, building rental, and the Air National Guard was $18,584. This made his annual income at the time of the request for modification of the alimony approximately $223,008.
¶ 7. Dr. Justus pays the housing and colleges expenses for his and Ms. Justus’s twenty-year-old daughter, Audrey. He also contributes to the college and living expenses of his two stepsons. The two stepsons each receive a $12,000 annual salary from Dr. Justus’s periodontal office for various dental and “handyman” work around the office. Dr. Justus pays his mother a salary of $7,920 per year to do various chores around his office. He estimates that the total paid out per month to family members from his office is $3,000. Dr. Justus and Mary Beth’s daughter attends private school. Dr. Justus estimates his monthly expenses for this child to be approximately $1,185.
¶ 8. At the time of the divorce, Ms. Justus did not work outside the home. She cared for the couple’s three minor children and received sole custody of the children at the time of the divorce. She was awarded $1,800 a month in child support to be paid until the oldest child reached the age of majority or became emancipated. The couple’s two oldest children, Stafford and Jarrod, were emancipated pursuant to the settlement agreement in March 1998. At the time of the settlement agreement, the youngest child, Audrey, was twenty years old and attending college. In March 1998, Ms. Justus went to work as a part-time teacher at Lamar Elementary School. She worked as a full-time teacher for the 1998 through 1999 school year. In 1998, she earned $10,361, and in 1999, she earned $20,692.
¶ 9. In 1999, Ms. Justus sold the former marital home, which was awarded to her in the divorce, and moved to Collierville, Tennessee. She realized approximately $85,000 in equity from the sale of the home, which was used toward the purchase of her home in Collierville. Dr. Justus paid the monthly note of $1,036.44 on the home until it was sold. The sale of the home eliminated Dr. Justus’s requirement to pay Ms. Justus’s mortgage. Ms. Justus makes the payment on the Collierville home; thus, her expenses have increased.
¶ 10. After moving to Collierville, Ms. Justus began working as a teacher in Memphis. At the time of the hearing, she was still working as a teacher in Memphis and earning extra income from tutoring and teaching summer school. Her annual *144 base salary is $45,688, and she receives a two percent annual raise. Her gross monthly income from salary is $3,807. She also receives $2,900 in alimony and $775 in child support per month. Therefore, her total monthly income is $7,482. After deductions, the resulting net income is $5,879. She has also established a savings account and retirement accounts. She estimates that her monthly expenses are approximately $4,937.
¶ 11. Pursuant to the settlement agreement in 1998, Ms. Justus received as her sole property a certifícate of deposit (CD) in the amount of $25,000 and the remaining funds in the approximate amount of $12,000 derived from a previous CD. The CDs were intended for the children’s education and were frozen by the divorce decree. In March 1998, the two oldest children were emancipated but not attending college. Ms. Justus acquired these funds, but she had no record of how they were spent. According to her testimony, she spent $12,000 to pay off a debt owed by the couple’s oldest son, Stafford. She testified that the remainder of the $25,000 was given to Stafford when he moved out of state. As for the $12,000, Ms. Justus testified that she paid approximately $6,000 of this amount on attorney’s fees after one of her sons was arrested, and she expended the remainder of the $12,000 on other expenses for this son. Although there was no documentation of the distribution of these funds, the chancellor found that Ms. Justus no longer had any of the money from the CDs.
STANDARD OF REVIEW
¶ 12. This Court will not disturb the findings of a chancellor unless we find an abuse of discretion, an erroneous application of law, or manifest error. Andrews v. Williams, 723 So.2d 1175, 1177 (¶ 7) (Miss. Ct.App.1998). Thus, if we find substantial evidence in the record to support the chancellor’s findings, we will not reverse. Wilbourne v. Wilbourne, 748 So.2d 184, 186 (¶ 3) (Miss.Ct.App.1999). “The Court reviews questions of law, however, under a de novo standard.” Stacy v. Ross, 798 So.2d 1275, 1278 (¶ 13) (Miss.2001).
DISCUSSION
I. DID A MATERIAL CHANGE IN CIRCUMSTANCES OCCUR SUFFICIENT TO JUSTIFY A MODIFICATION OF THE ALIMONY?
¶ 13. Dr. Justus argues that the chancellor erred in denying his request for a reduction or termination of the alimony. He argues that both his and Ms. Justus’s financial situations have changed such that a modification is warranted.
¶ 14. “Alimony awards by the court or by an agreement incorporated into the decree of the court, if not lump sum, have long been subject to modification upon proof of material change in circumstances subsequent to entry of the decree because of public policy.” Anderson v. Anderson, 692 So.2d 65, 70 (Miss.1997) (quoting Taylor v. Taylor, 392 So.2d 1145, 1147 (Miss.1981)). The material change in circumstances must not be one that is anticipated by the parties at the time of the original decree. Id. In determining an award or modification of alimony, the chancellor must consider the factors set out in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Parker v. Parker, 934 So.2d 359, 361 (¶ 5) (Miss.Ct.App. 2006). The Armstrong factors are:
(1) the income and expenses of the parties; (2) the health and earning capacity of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence and absence of minor children in the home, which may *145 require that one or both of the parties either pay, or personally provide child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) any fault or misconduct; (11) wasteful dissipation of the assets by either party; (12) any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Id. (citing Armstrong, 618 So.2d at 1280). In applying the Armstrong factors, the chancellor must “comparte] the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree.” Steiner v. Steiner, 788 So.2d 771, 776 (¶ 16) (Miss.2001).
¶ 15. Dr. Justus argues that at the time of the agreement to reduce the alimony, Ms. Justus was a part-time teacher and stay-at-home mom with one child living at home. At the time of the request for modification, Ms. Justus was working full time, and the couple’s youngest minor child had gone to college. Also, Dr. Justus argues that he has experienced a material change in circumstances because his income from his periodontal practice had decreased since the divorce, and he and his current wife have a child that he is now supporting. He also has two stepsons whom he helps support.
¶ 16. The chancellor reviewed evidence of Dr. Justus’s and Ms. Justus’s incomes and expenses from 1998 through 2005. The chancellor also reviewed evidence from his ruling from the original divorce decree. The chancellor found that Dr. Justus’s income was lower and that his monthly expenses exceeded his monthly income. However, the chancellor found that most of the expenses were voluntarily incurred in his effort to maintain his established standard of living. Dr. Justus’s net worth still significantly exceeds Ms. Jus-tus’s net worth. Some of the purchases made by Dr. Justus since 1998 included: a lake house, two condominiums, land, various vehicles, two motorcycles, and two dirt bikes. He testified that he has considered selling some of his assets, but he has not taken steps to do so. He estimates his monthly expenses, including insurance for himself and his family and installment payments to creditors, are approximately $25,240.
¶ 17. The chancellor recognized that Dr. Justus paid for expenses of the couple’s youngest daughter, Audrey, while she was in college, including her housing, since August 2004. Dr. Justus also purchased Audrey a new car. Ms. Justus has also paid daily and periodic expenses for Audrey. Ms. Justus paid most of Audrey’s sorority expenses and pays approximately $150 a month for a cellular phone. She has purchased groceries for Audrey and has given her cash for various expenses. Ms. Justus testified that she spends at least $775 per month on Audrey despite Dr. Justus paying for her college, housing expenses, and vehicle.
¶ 18. While Ms. Justus’s income has increased, her monthly expenses have also increased due to the purchase of the home in Collierville. As of 1999, Dr. Justus no longer paid Ms. Justus’s mortgage. The purchase of the home lowered Dr. Justus’s monthly obligation to Ms. Justus, but it raised Ms. Justus’s monthly expenses. Also, Dr. Justus now pays less in alimony due to Ms. Justus’s employment. As for Dr. Justus’s argument that a material change in circumstances has occurred because Ms. Justus now makes more money, we find this argument is without merit as this was contemplated in the settlement agreement.
*146 ¶ 19. After carefully reviewing the facts of this case, the chancellor determined that while changes had occurred in both of the parties’ financial situations, these changes were not material in nature and could have been anticipated by the parties at the time of the divorce or settlement agreement. We cannot find that the chancellor abused his discretion in finding Dr. Justus has failed to prove by a preponderance of the evidence a material change in circumstances justifying the reduction or elimination of the alimony.
II. DID THE CHANCELLOR APPLY AN ERRONEOUS LEGAL STANDARD?
¶ 20. In this section, Dr. Justus reiterates his arguments from issue one of his brief and argues that not only was the chancellor manifestly wrong in his findings, but the chancellor made his findings based on an erroneous legal standard. He argues that the chancellor operated under the erroneous assumption that the only factor “justifying a reduction or termination of alimony would be when [the parties’] respective net worth’s [sic] were equal.”
¶ 21. Dr. Justus points us to two cases in support of his argument. In Graham v. Graham, 767 So.2d 277, 281 (¶ 11) (Miss. Ct.App.2000), this Court reversed an award of periodic alimony in the amount of $500 a month. Dr. Justus argues that in Graham, this Court recognized that $33,000 a year was a living wage in which one could sustain their needs, and Ms. Justus makes substantially more than $33,000 a year. We find that the facts in Graham are distinguishable from this case. In Graham, the parties were separated for seven years before Mr. Graham filed for an irreconcilable differences divorce. Id. at 279 (¶ 2). During those seven years, Ms. Graham never petitioned the court for any child support or alimony. Id. at 280 (¶ 8). While Ms. Graham’s monthly expenses exceeded her monthly income, the chancellor did not inquire into the necessity of those expenses. Id. The chancellor also failed to consider her fault for alimony purposes as required by Armstrong. Id. at (¶ 9). Further, Ms. Graham failed to file a brief on appeal which this Court found to be a confession of error. Id. at 281 (¶ 11). Multiple errors in Graham warranted reversal of the award of alimony; the decision was not based solely on Ms. Graham’s level of income as Dr. Justus contends.
¶ 22. The second case Dr. Justus draws our attention to is Jones v. Jones, 917 So.2d 95 (Miss.Ct.App.2005). Dr. Justus argues that in Jones, this Court recognized that an ex-wife that was in good health, had no dependents, made $51,000 a year, and had an established retirement account was not entitled to alimony. He argues that this factual scenario is comparable to Ms. Justus’s, except Ms. Justus is more financially secure than Ms. Jones. In Jones, the chancellor found that Ms. Jones proved a material change in circumstances requiring an increase in alimony. Id. at 101 (¶ 17). This Court reversed and remanded, finding that the chancellor erred in failing to consider the Armstrong factors; specifically, the chancellor failed to compare the relative positions of the parties at the time of the request for modification in relation to their- positions at the time of the divorce decree. Id. at 102 (¶¶ 20-21). This case is also distinguishable from the ease at hand since it was reversed based on error by the chancellor in not fully conducting an analysis under Armstrong.
¶ 23. In this section of his brief, Dr. Justus also makes the policy argument that an award of periodic alimony is not intended to continue indefinitely just because the couple was married at one time. *147 See Beacham v. Beacham, 383 So.2d 146, 148 (Miss.1980). He points out that he has paid alimony for sixteen years, which is as long as the length of the marriage. He argues that now that Ms. Justus is employed and has a savings and a retirement account, she no longer needs his support.
¶ 24. This Court is well aware that “[a]limony is not a bounty to which [the wife] became entitled to receive indefinitely simply by reason of the fact that at one time she had been married to [the husband].” Id. However, we must keep in mind our standard of review for modification of alimony. While we recognize that Dr. Justus has been paying alimony for at least the length of the marriage and many circumstances have changed during that time period, we cannot find that the chancellor’s decision was an abuse of discretion, an erroneous application of law, or manifest error. Andrews, 723 So.2d at 1177 (¶7).
¶ 25. After reviewing the facts of this case in a very thorough opinion nearly sixty pages long, the chancellor could not find a material change in circumstances warranting the modification of the alimony. We find that the chancellor addressed the Armstrong factors fully and made his decision accordingly. Consequently, we cannot find error in the chancellor’s conclusions and, therefore, must affirm.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF LAUDER-DALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.